566 So.2d 812 (1990)
OLE, INC., a Florida Corporation, D/B/a Uno, et al., Appellants,
v.
Yael YARIV, a Minor, by and through Her Parents, Guardians and Next Friends, Tzemach Yariv and Diana Yariv, Individually, et al., Appellees.
Nos. 88-1840, 88-1841.
District Court of Appeal of Florida, Third District.
September 4, 1990.
*813 Rasco, Reininger and Dannheisser and Steven Reininger and Sharon L. Blake, Miami, for appellant Ole, Inc.
Ralph W. Symons, Anderson, Moss, Russo & Cohen, Elizabeth K. Russo, Miami, for appellees Yariv.
Before SCHWARTZ, C.J., and COPE, J., and GAVIN K. LETTS, Associate Judge.
PER CURIAM.
Ole, Inc., defendant below, moved to set aside a default and default judgment. The trial court set aside the default judgment, but declined to set aside the default. Ole appeals, contending that the default should also have been vacated, while plaintiffs Yael, Tzemach and Diana Yariv separately appeal, contending relief should have been denied altogether. We conclude that the default should have been vacated and reverse insofar as that relief was denied.
Ole owns and operates small jewelry kiosks set up in retail shopping center malls which perform the service of earpiercing. Ole has a long-standing commercial arrangement with Caflon, Inc., a distributor which supplies the piercing gun and earring studs used by Ole. Caflon also maintains insurance which is intended to cover Ole as well as other similar users of Caflon's products.
It appears on this record that Ole was a fairly trouble-free vendor, having experienced few claims or complaints over the years, and none of substantial magnitude. When a claim was received, the standard practice was to forward the claim to Caflon, which would in turn submit the claim to insurance personnel. For over a decade, and until the present case, that practice had worked smoothly.
In the present case plaintiffs contend that Ole failed to take adequate precautions after piercing Yael Yariv's ears, as a result of which she fainted and fell, suffering personal injuries.[1] The plaintiffs' demand letters, as well as the complaint, were forwarded through the established channels to Caflon, which forwarded them to the insurance agency. Ole followed through by telephone with Caflon on several occasions and was assured by Caflon's president in each instance that the papers had been received and had been forwarded to the insurance agency. It is undisputed that insurance personnel called plaintiffs' counsel at least once after the demand letters were received, and again after the complaint was received. On the latter occasion, the purpose of the telephone call was to request an extension of time in which to obtain counsel to appear and defend Ole. Plaintiffs' counsel agreed to that request. Thereafter, however, counsel did not appear in the case. Plaintiffs applied ex parte for a default, which was entered, and thereafter obtained a default judgment.
From the record before us it appears that there was a negligent insurance agency employee who had allowed a gap in coverage in the insurance policies for Caflon. The employee then tried to cover up *814 the gap by manipulating insurance files, apparently so that no claim would be attributed to the "gap." When the employee was found out, she was fired. This led to the discovery that the Ole claim was within the "gap" period, resulting in the denial of coverage. The insurance agency informed a subordinate employee at Caflon about the denial of coverage. That employee erroneously assumed that the insurance agency would advise Ole directly. The agency did not do so. The end result was that Ole remained unaware that it was not being defended, until the local press reported that the plaintiffs had obtained a seven million dollar default judgment against Ole. Within a matter of days after learning of the judgment, Ole moved to set aside the default and offered substantial defenses, supported by affidavit. The trial court set aside the default judgment, but denied the motion to set aside the default.
For two reasons, the default should have been set aside. First, this is a case in which the plaintiffs had actual knowledge that Ole intended to defend the lawsuit. Plaintiffs knew that their demand letter, as well as their complaint, had been forwarded by Ole, via its distributor, Caflon, Inc., to the insurance carrier. An insurance representative spoke with plaintiffs' counsel about the demand letter, and after the complaint was filed, requested and received an extension of time in which to procure counsel who would represent Ole.
Plaintiffs' counsel did not know why there was no appearance by counsel for Ole, but plaintiffs knew that Ole intended to defend the lawsuit. Notwithstanding that knowledge, plaintiffs elected to apply ex parte for entry of a default by the clerk, and the case proceeded thereafter without notice to Ole.
With regard to this point we follow this court's recent decision in Rapid Credit Corp. v. Sunset Park Centre, Ltd., 566 So.2d 810 (Fla. 3d DCA 1990), as well as Gulf Maintenance & Supply, Inc. v. Barnett Bank, 543 So.2d 813 (Fla. 1st DCA 1989). In Rapid Credit Corp. the defendant filed a motion to transfer and consolidate a later-filed case with an earlier-filed case involving the same parties. Through a mistake, the motion was served and filed only in the earlier case, but not the later-filed case. Since no paper had been served or filed in the later action, plaintiff requested and obtained an ex parte default. This court reversed, stating:
Rapid's motion to transfer and consolidate the case, though erroneously filed, should have put Sunset's attorney "on notice" that Rapid intended to contest the action. This notice, under Rule 1.500(b), required Sunset's attorney to notify Rapid before seeking a default. Further, rule 1.500(b) requires that the court, rather than the clerk, enter a default when any paper has been filed or served. Gulf Maintenance & Supply, Inc. v. Barnett Bank of Tallahassee, 543 So.2d 813 (Fla. 1st DCA 1989).
Here, once Rapid filed its motion to consolidate, Sunset's attorney clearly should have known that Rapid intended to defend this action. Sunset's attorney should have realized the confusion with the case numbers and that Rapid's attorney intended to defend on the merits. In Gulf Maintenance, the court held, "[a] default is a procedural matter within the control of the attorney, so plaintiff's counsel should contact the attorney known to be representing a defendant to determine whether the latter intends to proceed in the matter before causing a default to be entered." 543 So.2d at 816.
Id. at 811 (emphasis added).
A similar situation was presented in Gulf Maintenance, where the plaintiff had actual knowledge that the suit was to be defended. Despite that knowledge, the plaintiff elected to make an ex parte application for default, thus insuring that the defendant would not have a reasonable opportunity to correct what was obviously an administrative error. In holding that the default must be set aside, the court relied on Coggin v. Barfield, 150 Fla. 551, 554, 8 So.2d 9, 11 (1942):
The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached *815 without the difficulty that arises from a contest by the defendant.
543 So.2d at 816. The Gulf Maintenance court said "notice of an application for default should always be served when the plaintiff is aware that a defendant is being represented by counsel who has expressed an intention to defend on the merits."[2]Id. See generally North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962); Reicheinbach v. Southeast Bank, N.A., 462 So.2d 611 (Fla. 3d DCA 1985); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337, 1339 (Fla. 3d DCA), cert. denied, 378 So.2d 342 (Fla. 1979).[3]
Second, and alternatively, the default should have been set aside by reason of the indistinguishable authority of B.C. Builders Supply Co. v. Maldonado, 405 So.2d 1345 (Fla. 3d DCA 1981), as well as by the principles announced in North Shore Hospital and Edwards v. City of Fort Walton Beach, 271 So.2d 136 (Fla. 1972). In B.C. Builders, B.C. sold a defective wheelbarrow tire manufactured by Union Fork & Hoe Company. When suit was brought against both companies, B.C. advised Union Fork, and was informed that B.C. was an unnamed insured entitled to coverage under Union Fork's insurance policy. The complaint was delivered to the insurance company for defense. The claims supervisor, through a misunderstanding, initially requested an extension of time from plaintiff's counsel for Union Fork only. The claims supervisor later discovered his mistake and attempted to obtain an extension for B.C. as well, but in the meantime the plaintiff had obtained a default. This court held that the facts clearly demonstrated excusable neglect. 405 So.2d at 1348.
While B.C. is dispositive, North Shore itself counsels that "`if there be any reasonable doubt in the matter [of vacating a default], it should be resolved in favor of granting the application and allowing a trial upon the merits of the case....'" 143 So.2d at 853 (citation omitted). North Shore characterizes the issue as being whether "the party [moving to set aside the default] be guilty of gross negligence," 143 So.2d at 853 (emphasis in original) (citation omitted), in which case the default will not be opened; for less than gross negligence, the default will be opened.[4]
We therefore reverse the trial court's order insofar as it failed to set aside the default, and remand with directions that the default be set aside. We affirm the vacating of the default judgment.
NOTES
[1] Ole denied any negligent acts and contended that any injuries alleged to have occurred actually resulted from a preexisting medical condition.
[2] While both Rapid Credit and Gulf Maintenance are couched in terms of an obligation to consult with opposing counsel, the same principle applies where, as here, there is actual knowledge the party intends to defend. Here, additional time had been sought to procure counsel.
[3] Rapid Credit and Gulf Maintenance rest on the basis that Rule 1.500, Florida Rules of Civil Procedure, must be interpreted liberally in accordance with the underlying purpose of the Rule, rather than technically, see Coggin v. Barfield; see also North Shore Hospital, Inc. v. Barber, and alternatively, on the basis that the unfair surprise to the defendants was dispositive on the issue of excusable neglect.
[4] Plaintiff's reliance on Herrick v. Southeast Bank, N.A., 512 So.2d 1029 (Fla. 3d DCA 1987), is misplaced. That case involved the application of the default rule where counsel has appeared in the action but fails to defend. The special considerations there involved are set forth in footnote 3. Id. at 1030. Likewise, in Herrick the default was obtained only after due warning and appropriate notice to counsel, a situation not present here. Id. at 1030 & nn. 2-3. See also National Premium Budget Plan Corp. v. All American Assurance Co., 389 So.2d 324 (Fla. 3d DCA 1980).