777 So.2d 1191 (2001)
NATIONAL ENTERPRISES, INC., Appellant,
v.
FOODTECH HIALEAH, INC., Appellee.
No. 3D99-820.
District Court of Appeal of Florida, Third District.
February 21, 2001.
Liebler, Gonzalez & Portuondo, P.A. and J. Randolph Liebler, for appellant.
Ricardo R. Corona, for appellee.
*1192 Before SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO, and RAMIREZ, JJ.

ON REHEARING EN BANC
GREEN, J.
We grant rehearing, withdraw our opinion of January 5, 2000 and substitute this opinion in its place.
This is an appeal from a final order dismissing this case for lack of prosecution. The question presented for our consideration is whether the good faith filing of two notices of hearing, that are unquestionably legal nullities since they were directed to a motion already disposed of by the trial court, are sufficient record activity to prevent a dismissal pursuant to Florida Rule of Civil Procedure 1.420(e). In accordance with our earlier holding in Alech v. General Insurance Company, 491 So.2d 337 (Fla. 3d DCA 1986), we conclude that they are not and affirm the order under review.
This case began on August 15, 1995, when National Enterprises, Inc. ("NEI") filed a complaint against Foodtech Hialeah, Inc. ("Foodtech"). At the time, NEI was represented by the law firm of Haley, Sinagra & Perez, P.A. On January 9, 1996, Foodtech, then represented by Forrest Sygman, Esq. filed its answer, affirmative defenses and counterclaim. NEI moved to dismiss Foodtech's counterclaim on January 31, 1996. This motion was granted by the trial court in an order dated June 13, 1996.
From the time that the trial court entered the order dismissing Foodtech's counterclaim until December 1998, or 2½ years later, there was absolutely no record activity in this case for purposes of Rule 1.420(e).[1] In fact, the only thing that transpired in this case during this 2½ year "hiatus" period was a substitution of counsel for both parties.[2] At some unknown point in time, NEI substituted J. Randolph Liebler, Esq. of the firm of Liebler, Gonzalez & Portuondo, P.A. for Haley, Sinagra & Perez, P.A.[3] Thereafter, Foodtech also substituted its counsel of record by filing a stipulation for substitution of counsel on October 31, 1997, seeking to substitute Richard R. Corona, Esq. as its counsel of record for Mr. Sygman. The trial court granted this substitution on the same date that it was requested by Foodtech.
From August 1997, when the record reflects that Mr. Liebler had undertaken the representation of NEI until December 1998 (or 16 months), there was no record activity in this case. On December 30, 1998, or at least one year after the commencement of his representation of the plaintiff, Mr. Liebler filed a notice of hearing on the motion to dismiss counterclaim and served the same on Mr. Corona. This *1193 notice did not attach a copy of the motion to be heard nor did the notice contain a description of the motion. The hearing on the motion was specially set by Mr. Liebler for January 13, 1999. Mr. Liebler claims, and it is not disputed for purposes of this appeal, that the file that he had received from NEI's predecessor counsel did not contain an order on the motion to dismiss counterclaim. He therefore believed that this case was still not yet at issue in December 1998.
Mr. Corona, on the other hand, responds, and it is not disputed for purposes of this appeal, that he was confused by this notice of hearing because the file that he had inherited from Foodtech's predecessor counsel, did not reflect the pendency of any outstanding motions in this case. For this reason, Mr. Corona requested and obtained a continuance of the hearing from Mr. Liebler so that he could review the court's file. Upon his review of the court's file, Mr. Corona discovered that the motion to which NEI's notice was directed was the same motion which had already been disposed of by the trial court in the June 13, 1996 order.
On January 15, 1999, apparently still unaware of the June 13, 1996 order, Mr. Liebler filed a renotice of hearing of NEI's motion to dismiss counterclaim. On that same date, Mr. Corona filed the defendant's motion to dismiss for lack of prosecution pursuant to Rule 1.420(e). NEI filed a memorandum in opposition asserting, among other things, that its two notices of hearing dated December 30, 1998 and January 15, 1999, constituted record activity and that the file received by its successor counsel from prior counsel had not included a copy of the order granting plaintiffs motion to dismiss counterclaim dated June 13, 1996. A hearing on the motion to dismiss for lack of prosecution was conducted. The trial court granted this motion and this appeal followed.
On this appeal, NEI cites to Del Duca v. Anthony, 587 So.2d 1306 (Fla.1991) and asserts that the filing of its two notices of hearing, within one year preceding the appellee's motion to dismiss for lack of prosecution, was sufficient record activity to withstand Foodtech's motion to dismiss where the notices of hearing were calculated to move this case forward and were filed in good faith. We disagree and find that NEI has misconstrued the supreme court's decision.
Initially, we note that the obvious intent of rule 1.420(e), or the failure to prosecute rule, is to make litigants, particularly plaintiffs, more vigilant about hastening suits to their just conclusion. See e.g. Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla.1972) (stating that "[w]e are interested today in moving causes and in expediting litigation in the proliferation of increasing law suits."). The resolution of a motion to dismiss for failure to prosecute involves a two-step process. "First, the defendant is required to show there has been no record activity for the year preceding the motion. Second, if there has been no record activity, the plaintiff has an opportunity to establish good cause why the action should not be dismissed." Del Duca, 587 So.2d at 1308-09.
Contrary to the argument advanced by NEI on this appeal, the record activity necessary to withstand a dismissal pursuant to Rule 1.420(e) must be valid activity. That is because record activity that is invalid or constitutes a legal nullity cannot possibly advance a cause forward or hasten a case to judgment. Thus in Alech, we held that a notice of trial filed at a time when the case was not at issue was a nullity and as such, did not constitute proper record activity sufficient to defeat an otherwise valid motion to dismiss for a lack of prosecution made. Alech v. Gen. Ins. Co., supra.
The second district has similarly construed this record activity requirement. In Buss Aluminum Products, Incorporated v. Crown Window Company, 651 So.2d 694 (Fla. 2d DCA 1995), the court held *1194 that an untimely filed and legally insufficient reply to affirmative defenses did not constitute record activity for purposes of Rule 1.420(e). As the court recognized, "[i]t does nothing to hasten the suit to judgment and is a mere passive effort to keep the suit on the docket." Id. at 695.
In this case, had the appellant's two notices of hearing been directed to an unresolved motion, they most assuredly would have constituted record activity within the meaning of the rule. See Escalona v. Kersten, 682 So.2d 223 (Fla. 3d DCA 1996); Heinz v. Watson, 615 So.2d 750, 753 (Fla. 5th DCA 1993). However, because these notices were directed to a motion already argued and ruled upon by the trial court, they were absolute legal nullities for purposes of the rule and did nothing to advance this suit. See Buss Aluminum Prods., Inc., supra. Therefore, they could not toll the running of the one year period, notwithstanding their good faith filing.
We think that the appellant's reliance upon the supreme court's decision in Del Duca for the proposition that the good faith filing of the notices of hearing, in this case, constituted sufficient record activity is wholly misplaced. First of all, Del Duca merely sets forth the standard to measure the prosecutorial effect of otherwise valid discovery. See Buss Aluminum Prods., Inc., 651 So.2d at 695. Del Duca does not purport to legitimize the good faith filing of invalid or frivolous papers or pleadings in lawsuits.
The facts in Del Duca essentially were that the plaintiff/petitioner had timely filed a valid request to produce and notice of service of interrogatories on the defendant 364 days after the date of the last record activity. Unlike the invalid notices filed herein, the court was faced with the question of whether Del Duca's otherwise valid discovery was filed as a bona fide attempt to move the case towards a conclusion or whether it was filed as a mere attempt to avoid dismissal under rule 1.420(e). The issue, therefore, in Del Duca was confined solely to "the question of the proper test for trial courts to apply when considering a dismissal for failure to prosecute when some [valid] discovery activity had occurred during the last year." Del Duca, 587 So.2d at 1308. The court expressly recognized that a conflict existed among the districts as to the test to be applied. Id. at 1307. In resolving the conflict on this narrow issue, the court adopted the second district's objective test which "allows a trial judge to dismiss the cause if the discovery is in bad faith and is also without any design `to move the case forward toward a conclusion on the merits.'" Id. at 1308. Even if the Del Duca standard somehow had any applicability to the two notices filed in this case, it is readily apparent that they could not pass its test as these invalid notices surely could not have advanced this case forward toward a conclusion.[4]See Buss Aluminum Prods., Inc., 651 So.2d at 695.
The appellant's subjective good faith intentions in the filing of the two notices is certainly understandable under the facts of this case. We cannot permit, however, the subjective good faith intention of the appellant, to outweigh the otherwise objective invalidity of the notices themselves for purposes of Rule 1.420(e). If we did, then any paper or pleading filed by a litigant, no matter how frivolous, fanciful or nonsensical, could toll the one year period simply if it could be demonstrated that its proponent acted in good faith. Such a construction would obviously frustrate or undermine the purpose of Rule 1.420(e) in hastening suits to conclusion or judgment.
Thus, because these two notices were nullities and not record activity capable of moving this case forward toward a conclusion, see Barnett Bank of East Polk *1195 County v. Fleming, 508 So.2d 718, 720 (Fla.1987), the appellant had the alternative burden of otherwise demonstrating good cause to the trial court why no other valid record activity had taken place in this case in the year preceding the appellee's motion. A showing of "[g]ood cause requires some contact with the opposing party and some form of excusable conduct or occurrence which arose other than through negligence or inattention to pleading deadlines." Modellista de Europa (Corp.) v. Redpath Inv. Corp., 714 So.2d 1098, 1100 (Fla. 4th DCA 1998); see also Levine v. Kaplan, 687 So.2d 863, 865 (Fla. 5th DCA 1997) (holding that "[g]ood cause is excusable conduct other than negligence or inattention to deadlines."). Moreover, the law is clear that "[w]hether a party has shown good cause to keep an action pending, despite lack of record activity for more than one year, is a question committed to the sound discretion of the trial court, whose decision will not be disturbed absent an abuse of discretion." Palokonis v. EGR Enters. Inc., 652 So.2d 482, 483 (Fla. 5th DCA 1995). See also Kearney v. Ross, 743 So.2d 578 (Fla. 4th DCA 1999); Cole v. Dep't. of Corrections, 726 So.2d 854, 855 (Fla. 4th DCA 1999); Magers v. Walker's Cay Air Terminal, Inc., 451 So.2d 867 (Fla. 4th DCA 1983).
The appellant in this cause, however, has not provided us with any transcript or stipulation of statement of fact made pursuant to Fla.R.App.P. 9.200(b)(4) reflecting what, if any, explanation as to good cause was proffered to the trial court for its consideration. In the absence of a transcript or stipulated statement, we cannot conclude that the court abused its discretion and the presumption of correctness which attaches to the lower court's order of dismissal must remain intact. See van den Boom v. YLB Inv., Inc., 687 So.2d 964, 965 (Fla. 5th DCA 1997).
Therefore, for all of the foregoing reasons, we affirm the order of dismissal.
Affirmed.
JORGENSON, LEVY, GERSTEN, GODERICH, SHEVIN, SORONDO, and RAMIREZ, JJ. concur.
SCHWARTZ, Chief Judge (specially concurring).
Legal legend has it that, after the two junior members of a three-judge appellate panel in Great Britain had announced elaborate, completely opposite opinions in a difficult case, the presiding judge broke the tie by solemnly pronouncing that he "agree[d] with the conclusion arrived at by my brother on the right for the reasons stated by my brother on the left." See Eastern Airlines & GAB v. Griffin, 654 So.2d 1194, 1196 (Fla. 1st DCA 1995) (Zehmer, C.J., specially concurring)(citing Robert A. Leflar, Appellate Judicial Opinions 213 (1974)). Except for the self-evident necessity of changing "brother" to "sibling," I am in much the same position.
Thus, I agree with almost everything Judge Cope says about what the law in this general situation, and what the result of this case in particular ought to be.[5] If Rule 1.420(e) arguendo serves any useful and valid purpose, it must or at least should be only to require that cases in which no one is interested not clog the dockets of our at-least-reputedly overburdened trial courts. It follows, as the dissent says, that no case should be dismissed for lack of prosecution when the plaintiff showsby filing any document whatever during the critical periodthat he wishes actively to pursue the case.[6],[7]
*1196 Unfortunately, however, that is not the law. The Supreme Court, by whose decisions we are of course bound, has stated that the pertinent test is not the plaintiff's desire or intent, expressed or otherwise, but rather whether there is any "record activity" that is "design[ed] to move the case forward toward a conclusion on the merits." Del Duca v. Anthony, 587 So.2d 1306, 1309 (Fla.1991).[8] Although, in some instances, applying that rule is a difficult process which requires making distinctions without apparent differences and reaching different results in the absence of principled distinctions, see Nichols v. Lohr, 776 So.2d 366 (Fla. 5th DCA 2001) (Griffin, J., dissenting), I must agree with Judge Green's opinion, which is fully in accord with Alech v. General Ins. Co., 491 So.2d 337 (Fla. 3d DCA 1986), that the present case is a clear one: the filing of a notice of hearing a motion which had been disposed of over a year before, whether theoretically a "nullity" or not, cannot be deemed a reasonable attempt to pursue a pending case as a matter of law. As in a similar situation concerning Rule 1.070(j), see Hernandez v. Page, 580 So.2d 793, 795-96 (Fla. 3d DCA 1991) (Schwartz, C.J., specially concurring), although I am unhappy with both the existence and the prevailing interpretation of Rule 1.420(e), I am bound to concur in affirmance.
COPE, J. (dissenting).
It makes no sense to dismiss for lack of prosecution when the plaintiff is, in fact, prosecuting the case.
Respectfully, the analysis in the majority opinion is contrary to the applicable Florida Supreme Court decisions.
*1197 We should reverse the dismissal order and remand with directions to reinstate the action.

I.
In October 1997, the present lawyers for plaintiff National Enterprises, Inc. entered the case. Thereafter more than a year expired without record activity in the case by either side.
Plaintiff's successor counsel believed that there was an outstanding motion to dismiss the counterclaim of defendant, Foodtech Hialeah, Inc. The file he had received from predecessor counsel contained the pending motion, but did not contain any order disposing of the counterclaim.
In December 1998, plaintiff served a notice of hearing on the motion to dismiss counterclaim. Defense counsel asked plaintiff to reschedule the hearing. Plaintiff complied, renoticing the hearing for a later date.
Defendant filed a motion to dismiss for failure to prosecute. Defendant argued that the plaintiffs notices of hearing had to be disregarded as a nullity, because the motion to dismiss counterclaim had already been ruled on. The trial court dismissed the action, and plaintiff has appealed.

II.
The Florida Supreme Court has said that a motion to dismiss for failure to prosecute triggers a two-step process:
First, the defendant is required to show there has been no record activity for the year preceding the motion. Second, if there has been no record activity, the plaintiff has an opportunity to establish good cause why the action should not be dismissed.
Del Duca v. Anthony, 587 So.2d 1306, 1308-09 (Fla.1991).
The first question before us, therefore, is whether there was record activity for purposes of the failure-to-prosecute rule. Read literally, there can be no dismissal under the failure-to-prosecute rule if there was any record activity whatsoever. See Fla.R .Civ.P. 1.420(e).[9] Since plaintiff filed two notices of hearing within the year prior to defendant's motion, the rule by its literal terms precludes dismissal.
By case law, however, the courts will disregard record activity that is a mere passive effort to keep the suit on the docket. See Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla.1972); see also Del Duca v. Anthony, 587 So.2d at 1309.
"Record activity constitutes conduct that is greater than a passive effort to keep the case pending; it must be an affirmative action calculated to move the suit to judgment." Fuster-Escalona v. Wisotsky, No. SC 93949, slip op. at 6, 25 Fla. L. Weekly S1080, 2000 WL 1752206, ___ So.2d ___, ___ (Fla. Nov. 30, 2000) (citation omitted); see also Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992).
It cannot be said that plaintiffs filing of the two notices of hearing was "a mere passive effort to keep the suit on the docket." Del Duca, 587 So.2d at 1309 (internal quotation marks omitted). Plaintiff believed there was a pending motion to dismiss counterclaim, and scheduled hearings on the motion. Obviously counsel intended to go to the hearing and argue the motion in order to bring the pleadings to a close. The fact that the plaintiff was mistaken about the status of the motion makes no difference.
The majority opinion says that the notices of hearing in this case must be disregarded as a nullity because they "cannot possibly advance a cause forward or hasten *1198 a case to judgment." Majority opinion at 1193. But "nullity" is not the legal test. According to Florida Supreme Court precedent, the question is counsel's (or the party's) intention.
The act of scheduling a hearing on a pending motion is an action by which the lawyer intends to move the case forward. And the filing of this notice of hearing did, as a practical matter, advance the cause: as soon as plaintiff learned that the motion to dismiss counterclaim had already been ruled on, the plaintiff filed a notice for trial.
The point of the failure-to-prosecute rule is to impel counsel to move the case forward. While the present case has a certain Rip Van Winkle quality to it, ultimately the plaintiff awakened from its slumber and took steps intended to advance the cause. Dismissal is not warranted here.
The majority opinion claims that if there is a reversal in this case, "then any paper or pleading filed by a litigant, no matter how frivolous, fanciful or nonsensical, could toll the one-year period simply if it could be demonstrated that its proponent acted in good faith." Majority opinion at 1194. The majority's parade of horribles has no place here. Counsel filed garden variety notices of hearing in this case. There is no suggestion whatsoever that he did so knowing that the motion to dismiss counterclaim had already been disposed of. If in some future case a litigant relies on some weird offbeat pleading unknown to the law, we can deal with that case at that time. But here counsel filed customary notices of hearing, for the customary purpose, and simply made a mistake. Under existing precedent, the notices of hearing count as record activity.
The majority opinion relies on two other cases which disregarded record activity on the ground that it was a "nullity." See majority opinion at 1193-1194 (citing Buss Aluminum Products, Inc. v. Crown Window Co., 651 So.2d 694 (Fla. 2d DCA 1995), and Alech v. General Ins. Co., 491 So.2d 337 (Fla. 3d DCA 1986)). As already stated, "nullity" is not the correct legal standard. In Alech, plaintiff filed a notice of trial prematurely, while in Buss the plaintiff filed an unnecessary reply to an affirmative defense. Both cases failed to address whether the documents at issue were filed as a mere passive effort to keep the case on the docket. Plainly in both cases counsel's intent was to move the case forward. Both Buss and Alech are wrongly decided.
In sum, the notices of hearing in the present case were filed with the purpose of moving the case forward, albeit under a mistake as to the status of the pleadings. They were not a mere passive effort to keep the suit on the docket. See Del Duca, 587 So.2d at 1308-09. It follows that the notices of hearing count as record activity.

III.
Assuming for purposes of discussion that the notices of hearing did not constitute record activity, the plaintiff is allowed "to establish good cause why the action should not be dismissed." Del Duca, 587 So.2d at 1308-09. That showing was made here.
After defendant filed the motion to dismiss for lack of prosecution, plaintiff filed its memorandum in opposition which stated, in part:
5. The file received by the undersigned from Plaintiffs prior counsel did not include a copy of the Order Granting the Plaintiff's Motion to Dismiss the Counter Claim.
6. As a consequence, the Notices of Hearing on the Motion to Dismiss the Counter Claim were filed in a good faith effort to move this case to conclusion.
That showing certainly constitutes good cause.
Florida has a long-standing policy in favor of adjudicating disputes on their merits. See North Shore Hospital, Inc. v. Barber, 143 So.2d 849, 852 (Fla.1962); see *1199 also Torrey v. Leesburg Regional Medical Center, 769 So.2d 1040, 1045-46 (Fla.2000) (reiterating "the policy of allowing cases to be decided on the merits whenever possible").
With few exceptions, Florida courts do not dismiss actions on account of a simple mistake by a lawyer or litigant, so long as there is no prejudice to the opposing party and there is none here. See, e.g., Torrey v. Leesburg Regional Medical Center, 769 So.2d at 1045-46 (refusing to treat as a "nullity" pleadings filed by an attorney not licensed in Florida; such pleadings are amendable after authorized counsel enters the case); Kaweblum v. Thornhill Estates Homeowner's Association, Inc., 755 So.2d 85, 87 (Fla.2000) (filing of notice of appeal in wrong court excused); Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993) (sanction less severe than dismissal with prejudice should be employed where feasible); Commonwealth Federal Savings and Loan Ass'n. v. Tubero, 569 So.2d 1271, 1273 (Fla.1990) (dismissal for failure to comply with discovery order permissible only if violation was willful); North Shore Hospital, Inc. v. Barber, 143 So.2d at 852 (default is to be set aside in cases of excusable neglect; all doubt is to be resolved in favor of adjudication on the merits).
In the present case plaintiff's counsel explained that he relied on the file provided to him by predecessor counsel which, as it turned out, did not have the order disposing of the motion to dismiss counterclaim. While it may have been the more cautious practice for successor counsel to check the file against the court's docket sheet, there is no uniform local practice in this regard, and if it could be said that there was any neglect at all, it was excusable.
The majority opinion does not address the merits of the good cause argument, saying instead that the majority declines to reach the issue in the absence of a transcript, or transcript substitute. Majority opinion at 1195. The majority opinion reasons that without a transcript, we have no way of knowing what was argued in the trial court.
The majority's stance is inappropriate in the circumstances of the present case. Defendantthe appellee herehas made no argument that there should be an affirmance on account of the absence of a transcript. In fact, the briefs of the two sides agree on what happened in the trial court.
Defendant's account of the proceedings in the trial court includes the following:
[I]ndeed the court considered a memorandum filed by [plaintiff] in support of its position. It included an argument of excusable neglect. The trial court resolved the issue against [plaintiff] and its decision is justified by the facts and law.
Answer brief of appellee at 3 (filed July 26, 1999) (emphasis added). Thus, the defendant confirms that plaintiff's "good cause" argument was the one contained in the plaintiffs memorandum filed in the trial court.[10]
The defendant's brief goes on to say:
[Plaintiff] argued below that their present counsel was not supplied a copy of the 1996 Order granting their own motion to dismiss the counter-claim. By this [plaintiff] advanced an argument to support excusable neglect. The trial court considered the argument and ruled in favor of [defendant]. Judge Friedman's decision was based on the principle that a plaintiff should be held accountable for the prosecution of his own case. Here the previously decided motion [to dismiss counterclaim] had been filed by ... the plaintiff below.
Id. at 5. Since the parties agree on what transpired in the trial court, it is not appropriate to decline to reach the merits of the "good cause" issue on account of the lack of a transcript.
*1200 In sum, plaintiff showed good cause why the action should remain pending.

IV.
The failure-to-prosecute rule is being invoked to dismiss the case at the very time the plaintiff (admittedly after a period of inactivity) was taking steps to prosecute the case. As a matter of common sense and under existing precedent, the notices of hearing count as record activity and even if they do not, good cause was shown.
The lawsuit should be reinstated.
FLETCHER, J., concurs.
NOTES
[1] Florida Rule of Civil Procedure 1.420(e), provides, in relevant part, that:

Failure to Prosecute. All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 1 year shall be dismissed by the court on its own motion or on the motion of any interested person, whether a party to the action or not, after reasonable notice to the parties, unless a stipulation staying the action is approved by the court or a stay order has been filed or a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending.
[2] The law is firmly established, however, that notices, pleadings or orders related to the withdrawal and substitution of counsel are insufficient record activity to defeat a motion to dismiss for failure to prosecute under rule 1.420 because the subject activity is passive in nature and not calculated to advance the cause. See Nesbitt v. Community Health of S. Dade, Inc., 566 So.2d 1 (Fla. 3d DCA 1989) (citations omitted).
[3] Although the record is silent as to the precise date of the NEI's substitution of counsel, a review of the pleadings in this case reveals that it must have occurred prior to August 31, 1997, because Mr. Liebler's name and firm address appears on the certificate of service of a "Release of Charging Lien for Attorney's Fees and Cost Advancement" filed by Haley, Sinagra & Perez on September 21, 1997 but dated August 29, 1997.
[4] A careful reading of Del Duca makes it clear that the supreme court has left open the possibility of a dismissal, even where valid discovery has been timely propounded within the year preceding the motion, if such discovery has been filed in bad faith.
[5] I also agree with the dissent's view that the absence of a transcript of the hearing below should have no effect on the decision.
[6] The filing of "any paper" is all that is required by Fla.R.Civ.P. 1.500(b) for the defendant to signal his intent to defend and thus to avoid a default without notice. See Ole, Inc. v. Yariv, 566 So.2d 812 (Fla. 3d DCA 1990). I see no reason for a different standard when the plaintiff is involved.
[7] Personally, I cannot see that the mere existence of even completely dormant open files, has any effect on judicial workload or harms anyone in any other meaningful way. I believe therefore that the object of reducing their numbers by means such as Rule 1.420(e) (and Rule 1.070(j)) cannot justify the dismissal of cases plaintiffs wish to maintain, on grounds unrelated either to their merits, to prejudice sustained by the defendants, or indeed to any cognizable judicial concern. The familiar argument that courts should not permit "stale" cases to "languish" in the system is fallacious at best. This is because the number of pending cases says nothing about the efficiency and diligence of the court system and its judges, which is the only matter with which one may legitimately be concerned. As we should make clear to the legislature and the public, the only "statistic" which accurately measures a court's ability in that respect is the promptness with which judges afford hearings and trials and render rulings thereafter to those litigants who want them. In my opinion, moreover, the emphasis on caseload (to which I have often myself succumbed both as a trial and appellate judge) leads to the dangerous consequence of giving judges what is otherwise rightly forbidden: a personal interest in the civil litigation pending before themcases which "belong to" and should be the concern solely of the parties. What is worse, the perceived desirability of "getting rid" of cases which "shouldn't be there" tends to place the courts on the side of one party, the defendant, whose interests alone are served by dismissals and against the other, the plaintiff, who is only disserved by them. Any potential compromise of the judicial disinterestedness which is the bedrock of our system is far too high a price to pay for lowering a number on a sheaf of court statistics.
[8] Del Duca states that the alternative, forbidden purpose of a particular filing is an "attempt to avoid dismissal" under the rule. In my judgment, since the very purpose of the rule is supposedly to eliminate cases which are not being prosecuted, any attempt to do so must be held to satisfy it. In other words, the Florida law, which is that there is somehow something wrong in the plaintiff's "avoiding" the effect of 1.420(e), has wrongly elevated that rule to one of substance which requires independent enforcement. As I have similarly pontificated concerning the rules of discovery, compliance with Rule 1.420(e), which should be only a means to promote efficiency in the administration of justice, has "become [an end] in [itself]," as to which

missteps which do not prejudice, and in fact bear little or no relation at all to the prosecution or defense of the underlying controversies, nevertheless result in final adverse determinations of those cases. Thus have the priorities become reversed and the dog permitted to swallow his master.
Summit Chase Condominium Ass'n v. Protean Investors, Inc., 421 So.2d 562, 565 (Fla. 3d DCA 1982) (Schwartz, C.J., concurring in part, dissenting in part).
[9] The rule provides, in part,

(e) Failure to prosecute. All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 1 year shall be dismissed ... unless ... a party shows good cause in writing ... why the action should remain pending.
Id. (emphasis added).
[10] The trial court memorandum is quoted in part at the start of part III of this opinion.