# Third District Court of Appeal
## State of Florida

Opinion filed March 30, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1746
Lower Tribunal No. 20-26030
_____

**Armando Cardona, et al.,**
Appellants,

vs.

**FirstBank Puerto Rico, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Robert C. Meyer, P.A., and Robert C. Meyer, for appellants.

Shutts & Bowen LLP, and Aliette D. Rodz and Jerel C. Dawson, for appellee FirstBank Puerto Rico.

Before EMAS, LINDSEY and BOKOR, JJ.

EMAS, J.

**INTRODUCTION**

Armando Cardona, Sr., Armando Cardona, Jr., Maria Cardona, Zuyen Cardona, and CMA Corporation, the defendants below, appeal from a default foreclosure final judgment in favor of plaintiff, FirstBank Puerto Rico ("FirstBank"), as well as an order denying defendants' subsequent motion to vacate same. We reverse and, for the reasons that follow, hold that the trial court erred in denying the motion to vacate the final judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

FirstBank filed the instant foreclosure complaint, naming the Cardonas and CMA Corporation as defendants. The defendants did not answer the complaint but, on February 5, 2021, (prior to the date a response to the complaint was due[1]) defendants' attorney, Robert C. Meyer, emailed a proposal for settlement to counsel for FirstBank.

The subject line of defendants' email read: "Proposal on []Bank Puerto Rico v. CMA and Cardonas Case No: 2020-026030-CA-01 Div. 30." Attached to the email was a three-page, written proposal for settlement, which contained the reference "FirstBank Puerto Rico v. CMA and Cardonas, Case No: 2020-026030-CA-01 Div 30."

---

[1] The defendants were served on different dates, triggering different deadlines for the filing of a response. The earliest deadline for any defendant to respond to the complaint was February 8, 2021.

The three-page settlement proposal indicated that defendants' attorney was "writing this letter to attempt to resolve the above-described lawsuit filed by your client against my clients. This proposal is being brought on behalf of the Corporation as well as on behalf of the individuals." The settlement letter went on to describe what counsel believed was his clients' defense to the lawsuit but noted that his clients wished to "reconcile matters," and thus offered certain payment terms in furtherance of the proposed settlement.

Thereafter, several emails were exchanged between plaintiff's attorney and defendants' attorney, all of which clearly evidence that they were discussing—and attempting to resolve—the instant lawsuit between their clients. Indeed, at one point plaintiff's attorney, in a response to an email by defendants' attorney, indicated that "the bank may consider a resolution of this type however, it would need to include payment of the attorney fees related to this matter." All told, the two attorneys exchanged more than fifteen emails between February 5 and May 19, 2021.

Nevertheless, on May 18, 2021, FirstBank filed an ex parte motion for clerk's default against defendants, alleging defendants "failed to file or serve

3

any paper in this action."[2]  The certificate of service on FirstBank's motion for clerk's default indicated service was sent to "all parties of record."  The motion for default was not sent to or served on defendants' attorney, even though he and plaintiff's attorney had been exchanging emails regarding this lawsuit since February.

The clerk's default was entered on June 2, 2021, after which FirstBank filed a motion for default final judgment.  The notice of hearing was sent to the Cardonas, but again was not sent to or served upon defendants' attorney.  The court entered a default final judgment of foreclosure on June 23, 2021.  A copy of the judgment was mailed to the Cardonas, but was not sent to or served on defendants' attorney.

On July 9, 2021, defendants' attorney filed an emergency motion to vacate the default and default final judgment, alleging that FirstBank failed to serve defendants' attorney with a copy of the motion for default, the motion for default final judgment, the notices of hearing, or a copy of the subsequent default and default final judgment.  The motion also alleged that the ex parte default and default final judgment motions were granted without notice to defendants' counsel, even though defendants' counsel had been in contact

_____

[2] On April 29, 2021, a clerk's default had been entered against CMA Corp., which was also represented by attorney Meyer as stated in the emails sent by him to plaintiff's attorney.

with plaintiff's counsel since February and that plaintiff sought the default and default final judgment while settlement negotiations were ongoing. Attached to the motion were the previously described email exchanges between the parties' counsel. Defendants' attorney also filed an affidavit of Armando Cardona, Jr., and Zuyen Cardona, averring that neither of them received a notice of hearing on the motion for final judgment nor a copy of the final judgment.

In response to the motion to vacate, FirstBank asserted that defendants were required to make a showing of excusable neglect, due diligence, and meritorious defense to establish their entitlement to have the judgment vacated, and that defendants had failed to make this requisite showing. FirstBank also argued that the communications from attorney Meyer did not constitute the filing of a "paper" under Rule 1.500 and therefore plaintiff was not required to provide Meyer with notice of the application for default (and default final judgment).

On July 20, 2021, the court held a hearing. Counsel for FirstBank took the position that there were no negotiations between the parties, but only that "opposing counsel was trying to refinance the property."[3] Counsel for

---

[3] While defendants' attorney Meyer did send a May 19, 2021, letter to plaintiff's attorney asking whether "we can resolve the lawsuit with a refinance . . .", this letter was dated one day **after** FirstBank had filed its

FirstBank also took the position, as argued in its written response, that to be entitled to relief, defendants were required (but failed) to establish excusable neglect, a meritorious defense, and due diligence. The trial court denied the motion to vacate and found: "Defendants did not meet the elements to vacate a default. Specifically, Defendants did not assert a meritorious defense, as required to vacate a default." This appeal followed.

## **DISCUSSION AND ANALYSIS**

We begin with the well-established proposition that "under Florida law, 'if there be any reasonable doubt in the matter of vacating a default, it should be resolved in favor of granting the application and allowing a trial upon the merits of the case.'" Contreras v. Stambul, LLC, 306 So. 3d 1143, 1144 (Fla. 3d DCA 2020) (quoting State Bank of Eau Gallie v. Raymond, 138 So. 40, 43 (Fla. 1931)). See also Cardet v. Resol. Tr. Corp., 563 So. 2d 167, 168 (Fla. 3d DCA 1990) ("The purpose of the rule is to speed the action toward conclusion on the merits where possible, not to expedite litigation by ex parte actions and surprise").

---

motion for clerk's default against the Cardonas and after FirstBank had obtained a clerk's default against CMA Corporation. A review of the email correspondence clearly evidences that Meyer advised plaintiff's attorney he was representing all defendants in the instant lawsuit, and that his correspondence with plaintiff's attorney was undertaken in an effort to resolve that litigation.

6

Florida Rule of Civil Procedure 1.500 provides, in pertinent part:

(a) By the Clerk. When a party against whom affirmative relief is sought has failed to file or serve any document in the action, the party seeking relief may have the clerk enter a default against the party failing to serve or file such document.

(b) By the Court. When a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by these rules or any applicable statute or any order of court, the court may enter a default against such party; provided that if such party has filed or served any document in the action, that party must be served with notice of the application for default.

. . .

(d) Setting aside Default. The court may set aside a default, and if a final judgment consequent thereon has been entered, the court may set it aside in accordance with rule 1.540(b).

Rule 1.500(a), which permits entry of an ex parte clerk's default only when a party "has failed to file or serve any document[4] in the action," "should be liberally construed in favor of deciding cases on the merits" rather than by default. Ace Funding Source, LLC v. A1 Transp. Network, Inc., 314 So. 3d 726, 727 (Fla. 3d DCA 2021) (additional citations omitted).

---

[4] As this court noted in Ace Funding, 314 So. 3d at 727 n. 2, a previous version of rule 1.500(a) used the word "paper." In 2016, the Florida Supreme Court amended this rule, replacing the word "paper" with "document", in recognition of existing e-filing and e-service requirements in the Florida courts. In re Amendments to Florida Rules of Civil Procedure, 199 So. 3d 867, 884 (Fla. 2016).

In furtherance of this policy in favor of deciding lawsuits on their merits, Florida courts construing rule 1.500(a) have defined the term "any document" broadly and liberally, "and [it] includes any written communication that informs the plaintiff of the defendant's intent to contest the claim." Contreras, 306 So. 3d at 1145 (citations omitted).

Therefore, "entry of a clerk's 'default as authorized under Florida Rule of Civil Procedure 1.500(a) **is not appropriate in cases where the plaintiff knows that a defendant is represented by counsel who intends to assert matters in defense of the cause of action**.'" Id. (quoting Gulf Maint. & Supply, Inc. v. Barnett Bank of Tallahassee, 543 So. 2d 813, 816 (Fla. 1st DCA 1989)) (emphasis added). In such circumstances, "the clerical default [i]s improvidently entered and the ensuing final judgment cannot stand." Id.

As we held in M.W. v. SPCP Grp. V, LLC, 163 So. 3d 518, 521 (Fla. 3d DCA 2015):

> In case after case, the Florida courts have held that a party cannot obtain an ex parte default when the party knows that the opposing side is represented by counsel and intends to defend on the merits.

See Apple Premium Fin. Serv. Co. v. Teacher's Ins. & Annuity Ass'n of Am., 727 So. 2d 1089 (Fla. 3d DCA 1999) (reversing order denying motion to vacate default where pre-suit negotiations between counsel for both parties indicated plaintiff was aware defendant was being represented by counsel

8

and intended to defend on the merits); Gulf Maint., 543 So. 2d at 816 (reversing denial of motion to vacate clerk's default and ensuing final judgment where plaintiff's counsel "knew at all times that [attorney] was representing these defendants and intended to assert matters in defense of the action," which required plaintiff to serve defendant's attorney with notice of the application for default and present to the court for entry (rather than obtaining a clerk's default); also noting: Florida's "default procedure is not intended to discourage settlement discussions before an answer is filed, nor is it intended to allow a plaintiff to take undue advantage of a defendant who engages in settlement efforts").  See also Ole, Inc. v. Yariv, 566 So. 2d 812, 814 (Fla. 3d DCA 1990) (trial court erred in denying motion to set aside default where "plaintiffs knew that [the defendant] intended to defend the lawsuit" and "[n]otwithstanding that knowledge, plaintiffs elected to apply ex parte for entry of a default by the clerk, and the case proceeded thereafter without notice to [the defendant]"); J.A.R., Inc. v. Universal Am. Realty Corp., 485 So. 2d 467, 468 (Fla. 3d DCA 1986) (reversing trial court for failing to set aside default where "[a]lmost two weeks after defendants served their 'defense' letter on plaintiff's counsel, plaintiff caused the clerk of the court to enter a default without notice to defendants").

9

Applying this controlling precedent to the facts presented, we agree with defendants that counsel for FirstBank was made aware, before a responsive pleading from defendants was due, and before filing its motion for default and subsequent motion for default final judgment, that Meyer represented the defendants and intended to assert matters in defense of the action. As a result, the notice of application for default should have been served on Meyer and should have been presented to the trial court rather than in an ex parte manner to the clerk. As noted by the Fifth District in <u>Gulf Maintenance</u>: "A default is a procedural matter within the control of the attorney, so plaintiff's counsel should contact the attorney known to be representing a defendant to determine whether the latter intends to proceed in the matter before causing a default to be entered." <u>Gulf Maint.</u>, 543 So. 2d at 816.

We further note that the trial court appeared to base its order denying the motion to vacate on the fact that defendants failed to assert a meritorious defense in support of their motion to vacate. However, and as this court has previously held, because the ex parte clerk's default was improvidently entered, the trial court was required to vacate the clerk's default and final judgment "without regard to whether the defendant can establish a meritorious defense or whether the defendant can demonstrate inadvertence

10

or excusable neglect." <u>Ace Funding</u>, 314 So. 3d at 728 (additional citations omitted).

## **CONCLUSION**

Given the nature and extent of the communications between counsel for plaintiff and counsel for defendants, plaintiff's counsel was aware that defendants were represented by counsel and that defendants intended through that counsel to assert matters in defense of the cause of action. Under these circumstances, plaintiff was not authorized to seek an ex parte default but was instead required to serve defendants' attorney with a notice of the application for default and seek such relief with the court. The trial court erred in denying defendants' motion to vacate the clerk's default and the default final judgment. We reverse and remand for the trial court to vacate both the default final judgment and the clerk's default, and for further proceedings consistent with this opinion.

11