543 So.2d 813 (1989)
GULF MAINTENANCE & SUPPLY, INC., C.M. Mihalich and Henry H. Brewer, Appellants,
v.
BARNETT BANK OF TALLAHASSEE, Appellee.
No. 88-1119.
District Court of Appeal of Florida, First District.
May 4, 1989.
*814 George E. Lewis II, Tallahassee, for appellants.
Ronald A. Mowrey, Tallahassee, for appellee.
ZEHMER, Judge.
This is an appeal from an order denying a motion seeking relief from a default judgment pursuant to rule 1.540, Fla.R.Civ.P. Appellants contend that the court erred in failing to set aside the default judgment because (1) the plaintiff failed to serve the application for default upon defendants after defendants had served plaintiff's counsel with a paper, in violation of rule 1.500(b), Fla.R.Civ.P.; (2) the final judgment was entered upon proof of unliquidated damages without notifying defendants of a trial thereon, in violation of rule 1.500(e) and 1.440(c); and (3) the court abused its discretion in view of the showing in defendants' motion of excusable neglect and meritorious defenses within the meaning of rules 1.500(d) and 1.540(b). We reverse upon the first two grounds and, therefore, do not consider the third.
On July 9, 1985, Barnett Bank of Tallahassee filed a complaint against Gulf Maintenance & Supply, Inc., C.M. Mihalich, Henry Brewer, and Robert L. Smith. The complaint alleged that Gulf had executed a promissory note covering an open line of credit up to the face amount of $100,000.00; that Mihalich, Brewer and Smith had personally guaranteed payment of this note; that Gulf was in default for failure to pay the note when demanded; and that the principal sum of $63,634.72 plus interest remained due and owing to Barnett Bank. The complaint demanded judgment for damages, interest, costs, and attorneys fees.
Gulf was served on July 24 by service on its registered agent, George Lewis. Mihalich was served on July 23. Brewer was served on August 15 by service on attorney Lewis at Brewer's request.[1] Lewis undertook representation of these defendants in this case and called Charles Dodson, attorney for the bank, to advise him that the defendants had defenses and a counterclaim arising out of the matters alleged in the complaint and desired to discuss settlement. Following this discussion, Lewis sent Dodson a letter on August 13 confirming his representation of these defendants *815 and Dodson's agreement to an extension of time for filing a response while Dodson evaluated certain information regarding the defenses and counterclaim.[2] The letter offered the Bank a judgment against Gulf and the assistance of Mihalich and Brewer in marshaling the assets of Gulf that were pledged on the note if the Bank would release Mihalich and Brewer from their guarantees. On August 21, 1985 Dodson replied by letter to Lewis that the Bank wished to proceed against Mihalich and Brewer and had rejected Gulf's proposal included in the letter of August 13. Dodson's letter continued, "Accordingly, please serve a response to the Complaint on behalf of the Corporation, Mihalich and Brewer, at this time." (A 44). Lewis called Dodson to further discuss the matter, but was informed that Dodson was withdrawing as counsel and that Ronald A. Mowrey would take over representation of the Bank. Lewis then called Mowrey's office sometime prior to September 11 and discussed the case with an associate, David Russ; but Russ declined to comment on settlement possibilities, so Lewis asked that Mowrey call him. Mowrey did not do so.
On September 11 Mowrey's firm filed a notice of appearance in the pending case and served a copy on Lewis. At the same time Mowrey's firm also filed a notice of default with the clerk pursuant to rule 1.500(a), alleging that no paper had been served on the undersigned attorney, but did not serve a copy on Lewis or otherwise notify him that the Bank was proceeding to obtain a default. That same day the clerk entered a default against the defendants "for failure to serve or file any paper as required by law." (A. 5). On September 16 Lewis conferred by telephone with Mowrey concerning depositions of Mihalich and Brewer previously noticed by Dodson for September 24. Mowrey told Lewis that the depositions could be canceled, and stated that he would inquire further of the Bank about the offer of judgment and release of Mihalich and Brewer, but Mowrey made no mention of the default entered by the clerk.
The matter continued to linger with several other communications between Lewis and Mowrey, and in May 1986 Mowrey advised Lewis by letter that the Bank planned to sell at auction the secured inventory it had obtained from Gulf, but did not mention the default. The auction was held and the Bank realized $12,836.80 from the sale. Thereafter, on September 2, 1986, Mowrey filed a motion for final judgment and an affidavit for attorney's fees, and scheduled a final hearing or trial for September 29; but he did not serve or otherwise advise Lewis or the defendants of this motion and did not obtain an order setting trial pursuant to rules 1.500(e) and 1.440. An ex parte hearing was held on September 29 at which the Bank presented evidence concerning the amounts advanced on the note, payments received, and the proceeds recovered in the sale. The court entered final judgment on September 29 totaling $92,920.33, which included $87,148.47 as principal amount ($23,513.75 more than the amount alleged in the complaint), interest, costs, and attorney's fees. No copy of the final judgment was served on Lewis.
Defendants and Lewis assert that the first notice they had of this final judgment was in March 1987, when Mowrey served them with interrogatories in aid of execution pursuant to rule 1.560. Lewis and Mowrey again communicated further about settlement without success, and finally, just before the judgment was a year old, Lewis filed a motion for relief from judgment pursuant to rule 1.540(b), alleging the foregoing facts. The motion was denied and this appeal ensued.
*816 Some preliminary observations regarding the purpose and function of defaults are appropriate. Nearly 50 years ago the Supreme Court of Florida commented:
The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant.
Coggin v. Barfield, 150 Fla. 551, 8 So.2d 9, 11 (1942). These comments remain valid today under current rule 1.500. The purpose of the rule is to speed the action toward conclusion on the merits where possible, not to expedite litigation by ex parte actions and surprise. See H. Trawick, Florida Practice and Procedure. § 25-2, 25-3 (1985). The entry of default is appropriate where a defendant does not intend to appear and defend the merits of the action or engages in dilatory practices in bad faith solely for purposes of hindrance and delay. On the other hand, default is not appropriate in cases where the plaintiff knows that a defendant is represented by counsel who intends to assert matters in defense of the cause of action. The default rule has been liberally construed in Florida to allow trial upon the merits where all parties appear rather than to encourage resolution of legal disputes by default. EGF Tampa Associates v. Edgar V. Bohlen, 532 So.2d 1318 (Fla. 2d DCA 1988); Reicheinbach v. Southeast Bank, N.A., 462 So.2d 611 (Fla. 3d DCA 1985); See H. Trawick, Florida Practice and Procedure, § 25-2 (1985).
To carry out these purposes, rule 1.500(a) allows entry of a default by the clerk where no paper has been served by a defendant in an action. The underlying premise for this provision is the notion that failure to appear or otherwise respond to the complaint indicates that a defendant does not intend to contest the case. But rule 1.500(b) requires service of notice of an application for default when "any paper" has been filed or served in the action and requires the court, rather than the clerk, to enter a default in these circumstances. This provision is premised on the notion that such paper indicates an intention by the defendant to defend on the merits and that due process considerations require such notice if the plaintiff intends to proceed and hold the defendant within the time constraints in the rules of procedure. The default procedure is not intended to discourage settlement discussions before an answer is filed, nor is it intended to allow a plaintiff to take undue advantage of a defendant who engages in settlement efforts. Florida courts have, therefore, liberally construed the term "any paper" to include a defendant's pro se letter sent to plaintiff and not filed with the court, an attorney's letter stating that he had not yet been retained, and even a letter drafted, signed, and mailed by a paralegal of a law firm. See EGF Tampa Associates v. Edgar V. Bohlen, 532 So.2d at 1321-2.
It follows that notice of an application for default should always be served when the plaintiff is aware that a defendant is being represented by counsel who has expressed an intention to defend on the merits. A default is a procedural matter within the control of the attorney, so plaintiff's counsel should contact the attorney known to be representing a defendant to determine whether the latter intends to proceed in the matter before causing a default to be entered. See H. Trawick, § 25-3.[3]
*817 In the instant case, the appealing defendants responded to the complaint through the August 13, 1985 letter from their attorney, Lewis. The Bank's lawyers knew at all times that Lewis was representing these defendants and intended to assert matters in defense of the action. Consequently, rule 1.500(b) required the Bank to serve Lewis with notice of the application for default and present it to the court for entry; the invalid entry of the default by the clerk under rule 1.500(a) in these circumstances renders the judgment void. See Picchi v. Barnett Bank of South Florida, N.A., 521 So.2d 1090 (Fla. 1988). As the application for default was not presented to the court as required by rule 1.500(b), it is unnecessary for us to consider the merits of the defense as a predicate to vacating the default judgment; although the factual basis for an affirmative defense and counterclaim was stated in the letter, the rule does not require us to consider whether the paper served is facially sufficient to allege a legal defense. Reicheinbach v. Southeast Bank, N.A., 462 So.2d at 612 ("We reject appellee's assertion that the letter was insufficient to require notice because it was not a responsive pleading. The rule does not limit the type of paper to be served. We note that the letter was served within the time agreed to ... and entitled appellant to notice of default proceedings.") This rule is premised on the necessity to serve notice of the application for default once the Bank gained knowledge from the paper that the defendants' attorney intended to defend the action.
The Bank further contends, however, that, in response to defense counsel's August 13, 1985 letter, the Bank's original counsel sent the letter of August 21, 1985 requesting that defendants file a responsive pleading and argues that this fact should be found sufficient to uphold the default. The Bank further points out that defendants' attorney was grossly negligent and did not file anything with the court until September 1987, nearly two years after the complaint had been initially filed and the answer was due. These considerations would be highly material if we were only concerned with setting aside a properly entered default on grounds of a defendant's inadvertence or excusable neglect. See Florida Aviation Academy v. Charter Air Center, Inc., 449 So.2d 350 (Fla. 1st DCA 1984). While we disapprove defense counsel's long delay in filing anything with the court,[4] the legal standard for overturning a default entered in violation of rule 1.500(b) is not the same as the standard for setting aside a default properly entered under rule 1.500(a). The August 21 request by the Bank did not relieve its counsel of the duty to serve notice of its application for default under 1.500(b). That rule is intended to require notice of such application to afford a defendant's counsel opportunity to file responsive pleadings before the application for default comes on for hearing and the default is entered, as permitted by rule 1.500(c).
We next address the defendants' contention that the final judgment is void and must be vacated because no notice of trial was served and no order setting trial as required by rule 1.440 was either entered or waived by the defendants. Initially, we point out that rule 1.500(b) only requires service of the application for default; service of a notice of hearing on the application for default is not required. Picchi v. Barnett Bank of South Florida, N.A., 521 So.2d at 1091; Fierro v. Lewis, 388 So.2d 1361 (Fla. 5th DCA 1980). But *818 rule 1.500(e) requires the court, after the proper entry of a default, to accord a right of trial by jury to the parties when required by statute or the constitution "if it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter to enable the court to enter judgment." Rule 1.440(c), similarly, requires, "In actions in which the damages are not liquidated, the order setting an action for trial shall be served on parties who are in default in accordance with Rule 1.080(a)."
In the instant case the damages proved by the Bank at final hearing and included in the final judgment were not the amount claimed in the complaint, were not stipulated to by the defendants, and could not be arrived at by mathematical calculation from anything attached to the complaint nor by application of definite rules of law. Rather, as conceded by the Bank at oral argument, the court had to receive additional evidence at the final hearing as to the amount of the advances, repayments, and recovery from the sale of security to enter the final judgment. Therefore, the damages requested by the motion for final judgment were not liquidated within the meaning of rule 1.440(c); Lauxmont Farms, Inc. v. Flavin, 514 So.2d 1133 (Fla. 5th DCA 1987); Buffington v. Torcise, 504 So.2d 490 (Fla. 3d DCA 1987); Bowman v. Kingsland Development, Inc, 432 So.2d 660 (Fla. 5th DCA 1983); Air Unlimited, Inc. v. Volare Air, Inc., 428 So.2d 294 (Fla. 3d DCA 1983).[5]
Accordingly, the order denying the motion for relief from judgment is reversed, the default entered by the clerk and the final judgment entered pursuant thereto are vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Smith never appeared in the trial proceeding and is not a party to this appeal.
[2] Lewis's letter stated that the loan and personal guarantees executed on February 9, 1983 were serviced reasonably well for a year and a half; that in late June or early July 1984, Willis Sims, Senior Vice President of the Bank, called on Gulf during which visit he requested a list of Gulf's customers without stating the reason for such request; that during July, 1984, Sims notified all of Gulf's accounts receivable customers to pay directly to the Bank and notified Gulf that its line of credit was being called; that "the combination of these events made it almost impossible for the company to continue in operation...." (A 42).
[3] Trawick's treatise states at that section:

The propriety of vacating a default on the request of the opposing attorney is a frequent question. A default admits liability. Some attorneys assert that the admission is a substantive right and cannot be surrendered without the client's consent. Others take the opposite view based on the procedural nature of a default. The latter position is correct. A default is a procedural matter that is within the control of the attorney. He can and should vacate defaults by consent unless other factors are present, such as dilatory tactics by the defaulting party or other conduct by the defaulting party that constitutes oppression or harassment.
We agree with Mr. Trawick's view. Additionally, we note that the Code of Trial Conduct adopted by the American College of Trial Lawyers prescribes: "When [a lawyer] knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed."
[4] It is always preferable that a defendant timely file a pleading or other paper with the clerk, even though settlement discussions are ongoing, so that the court will know that the defendants are represented by counsel and intend to defend in good faith. Of course, the mere filing of an appearance solely as a delaying tactic with no legitimate purpose is improper, although notice of the application for default is nevertheless required under rule 1.500(b) once such notice of appearance has been filed. Picchi v. Barnett Bank of South Florida, 521 So.2d 1090 (Fla. 1988).
[5] The court in Bowman defined the difference between liquidated and unliquidated damages thus:

Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law. Since every negotiable instrument must be "an unconditional promise or order to pay a sum certain in money" (see, e.g., §§ 673.104(1)(b) and 673.106, Fla. Stat. (1981)), action for the sums directly due on negotiable instruments are, by definition, actions for liquidated damages. However, damages are not liquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment.
432 So.2d at 662-63.