WALLACE, Judge.
John Lloyd, Stephen King, and Richard Avichouser, Trustees of the 6001 4th Avenue South Trust dated 6/6/06, and Robert Bender (collectively Lloyd) obtained a judgment by default in the circuit court against U.S. Bank National Association (the Bank). The Bank moved to vacate the clerk’s default and the default judgment, and the circuit court denied the Bank’s motion. The Bank appeals the circuit court’s order. Because Lloyd obtained a clerk’s default without giving notice to the Bank even though Lloyd had actual knowledge that the Bank was repre *635 sented by counsel and that it intended to defend the action, the circuit court erred in failing to vacate the clerk’s default and the default judgment. Accordingly, we reverse the circuit court’s order, and we remand for further proceedings.
I. THE FACTUAL BACKGROUND
A. The Priorities Dispute
The litigation between Lloyd and the Bank involved a dispute about the relative priority of two mortgages on real property located in Pinellas County. The Bank held a mortgage on the property. The Bank’s mortgage may be referred to as “the Fremont mortgage.” Lloyd claimed to own the property free and clear of any claim by the Bank. Lloyd had purchased the property at a foreclosure sale involving a different mortgage. That mortgage may be referred to as “the Ligori mortgage.” The problem began when a title search incident to a sale of the property failed to disclose the existence of the Ligori mortgage. This difficulty was exacerbated when a deed and the Fremont mortgage that had been executed in conjunction with the sale were not recorded until six months after the transaction had been closed. To outline the facts that led to the parties’ dispute, we begin by describing the state of the title to the property before the defective title search and the recording irregularities occurred.
Before September 21, 2005, the property was owned by Harold L. Lee, Jr.[1] The property was subject to two mortgages. Wells Fargo Bank, N.A., held a first mortgage on the property. Nelson I. Ligori held the Ligori mortgage, which was junior to the Wells Fargo mortgage.
On September 21, 2005, Mr. Lee executed a warranty deed to the property in favor of Kenneth B. Rhodes. On the same day, Mr. Rhodes gave a mortgage on the property to Fremont Investment & Loan. The Fremont mortgage secured a promissory note to Fremont in the amount of $214,400. Proceeds from the Fremont loan in the amount of $144,889.37 were paid to satisfy the existing first mortgage held by Wells Fargo. The Ligori mortgage was not disclosed in the title search conducted in conjunction with the sale of the property. Because the Ligori mortgage was not disclosed by the title search incident to the sale, it was not satisfied at the closing and remained a lien against the property.
For reasons unexplained in our record, the warranty deed from Mr. Lee to Mr. Rhodes and the Fremont mortgage were not recorded until March 20, 2006, approximately six months after the closing. Meanwhile, on November 17, 2005, Mr. Ligori filed an action against Mr. Lee — the property’s titleholder of record — to foreclose the Ligori mortgage. Because Mr. Ligori had no record notice of Mr. Rhodes’ interest in the property or of the existence of the Fremont mortgage, he did not join either Mr. Rhodes or Fremont in the foreclosure action. A final summary judgment foreclosing the Ligori mortgage was entered on May 4, 2006. Lloyd bought the property for $9200 at the foreclosure sale. On June 19, 2006, the clerk of the court issued a certificate of title for the property to Lloyd.
While the Ligori foreclosure action was pending, Fremont assigned its mortgage to the Bank. On May 10, 2006, the Bank filed a foreclosure action against Mr. *636 Rhodes and other defendants. However, the Bank did not name Mr. Ligori as a defendant in its action to foreclose the Fremont mortgage. On August 10, 2006, the circuit court entered a summary final judgment of foreclosure in favor of the Bank with respect to the Fremont mortgage.
After Lloyd bought the property at the foreclosure sale of the Ligori mortgage, it attempted to obtain title insurance on the property. This effort led to Lloyd’s discovery of the impending foreclosure sale of the property under the Bank’s judgment foreclosing the Fremont mortgage. To respond to this new information, Lloyd took two separate, but related, steps. First, it filed a motion to intervene and a motion to cancel the foreclosure sale (the motion to intervene) in the Bank’s pending mortgage foreclosure proceeding. Second, it filed a separate quiet title action in the circuit court against Mr. Rhodes and the Bank. These developments lead us to a discussion of the proceedings in the circuit court between Lloyd and the Bank.
B. The Motion to Intervene and the Quiet Title Action
Lloyd filed its motion to intervene in the Bank’s pending mortgage foreclosure action on September 1, 2006. On the same day, Lloyd filed a separate quiet title action in the circuit court against Mr. Rhodes and the Bank. In both filings, Lloyd alleged that it owned the property free and clear of any claim by the Bank and that the Bank’s mortgage claim was a cloud on Lloyd’s title to the property. In the motion to intervene filed in the Bank’s pending foreclosure action, Lloyd requested the following relief: (1) an order allowing Lloyd to intervene in the action, (2) the cancellation of the scheduled foreclosure sale of the property, (3) a determination that the Bank’s interest in the property was subordinate to Lloyd’s title, and (4) general relief. Lloyd requested similar relief in the separate quiet title action: (1) a judicial determination that Lloyd’s title to the property was superior to the claims of the Bank and other parties, (2) a judgment quieting Lloyd’s title to the property against any competing claims, and (3) general relief. Thus both the claim that Lloyd asserted and the relief that it requested in the mortgage foreclosure action and the quiet title action were substantially similar.
The law firm of Echevarria, Codilis & Stawiarski (the Echevarria firm) represented the Bank in the foreclosure proceeding. Lloyd served the Echevarria firm with a copy of the motion to intervene. Lloyd also furnished the Echevarria firm with a courtesy copy of the complaint in the separate quiet title action.
Upon receipt of the copies of the motion to intervene filed in the foreclosure action and the complaint filed in the quiet title action, the Echevarria firm took certain preliminary steps to address the matter. Initially, the Echevarria firm cancelled the scheduled foreclosure sale of the property. In addition, the Echevarria firm forwarded copies of Lloyd’s filings to the Bank’s title insurer on the Fremont mortgage, Southern Title Insurance Corporation (Southern Title). The Echevarria firm had previously filed a title claim relative to the matter with Southern Title, and the title insurer proposed to retain the Echevarria firm to defend the Bank against the claim that Lloyd had asserted in the motion to intervene and in the quiet title action. However, the Echevarria firm delayed undertaking this additional representation until it could obtain a waiver of any potential conflict of interest from the Bank.
While the Echevarria firm was waiting for a response from the Bank about the *637 conflict waiver, Lloyd’s trial counsel[2] made several inquiries to the Echevarria firm concerning whether it would accept service on behalf of the Bank of the complaint in the quiet title action. On November 22, 2006, an attorney with the Echevarria firm responded to these inquiries by leaving a message with the secretary for Lloyd’s trial counsel. According to an affidavit made later by Lloyd’s trial counsel, the message read: “[She] got a response from [the Bank], they decided not to represent [the Bank] in the quiet title action. Feel it is a conflict.”
On November 24, 2006, the Echevarria firm notified Southern Title, the Bank’s title insurer, that it could not undertake the defense of the Bank with regard to Lloyd’s claim. A few days later, Peter A. Walther, Southern Title’s claims manager, spoke by telephone with Lloyd’s trial counsel in an attempt to negotiate a settlement of Lloyd’s claim. In a second telephone conversation that apparently occurred on December 7, 2006, Mr. Walther and Lloyd’s trial counsel were unable to reach an agreement concerning a settlement of Lloyd’s claim. At that point, Mr. Walther advised Lloyd’s trial counsel that Southern Title would retain counsel on behalf of the Bank to defend Lloyd’s claim. Mr. Walther also suggested that Lloyd’s trial counsel serve the summons and complaint in the quiet title action directly on the Bank.
On December 13, 2006, Mr. Walther made arrangements to retain the law firm of Awerbach & Cohn, P.A. (the Awerbach firm), to represent the Bank concerning the title issues raised in the pending foreclosure action and to defend the Bank in the quiet title action. At that time, neither Mr. Walther nor the Awerbach firm notified Lloyd’s trial counsel that the Awer-bach firm had been retained to represent the Bank with respect to Lloyd’s claim.
The next day, December 14, Lloyd’s trial counsel acted on Mr. Walther’s suggestion that he serve the Bank directly with process in the quiet title action. To this end, Lloyd’s trial counsel contacted one of the Bank’s representatives at the Bank’s legal department in Minneapolis, Minnesota. The representative stated that she was authorized to accept service for the Bank and directed Lloyd’s trial counsel to mail the summons and complaint in the quiet title action, together with an acceptance of service of process, to her at the Bank’s address in Minneapolis. According to the later affidavit by Lloyd’s trial counsel, the Bank’s representative “indicated that upon receipt of the paperwork, she would execute and return the Acceptance of Service and then forward the [Complaint] and Summons through the appropriate channels so that an Answer could be filed.”
As promised, the Bank’s representative signed the acceptance of service of process on December 18, 2006, and returned it to Lloyd’s trial counsel. However, for reasons unexplained in our record, neither Mr. Walther nor the Awerbach firm learned that the Bank’s representative had accepted service of process in the quiet title action until after a default judgment had been entered against the Bank. Consequently, the Awerbach firm did not file a timely response to the quiet title action. The Awerbach firm’s lack of knowledge that the Bank’s representative had accepted service of process in the quiet title action started a chain of events that led to the entry of a clerk’s default and a default judgment against the Bank.
C. The Default and the Default Judgment
On January 8, 2007, the Awerbach firm served a notice of appearance as cocounsel *638 for the Bank in the foreclosure action. The Awerbach firm sent copies of the notice of appearance by mail and facsimile to both the Echevarria firm and to Lloyd’s trial counsel. At this point, the Awerbach firm remained unaware that the Bank’s representative had accepted service of process in the quiet title action on December 18, 2006, and that a response to the quiet title complaint was then due.[3] A subsequent affidavit signed by Martin S. Awer-bach of the Awerbach firm stated that when he served the notice of appearance in the quiet title action on January 8, 2007, he also reviewed the docket in the quiet title action. According to Mr. Awerbach’s affidavit, when he reviewed the docket in the quiet title action, “there was no entry indicating that service of process had been attempted upon [the] Bank since the action had been filed on September 1, 2006.” Upon receipt of the Awerbach firm’s notice of appearance in the mortgage foreclosure action, Lloyd’s trial counsel did not contact the Awerbach firm to inquire if it intended to defend the Bank in the quiet title action.
On January 10, 2007, two days after Mr. Awerbach had served his notice of appearance in the mortgage foreclosure action and had checked the docket in the quiet title action, Lloyd filed the Bank’s acceptance of service of process in the quiet title action. On the same day, Lloyd filed a motion for the entry of a clerk’s default against the Bank. Lloyd did not serve a copy of the motion for default on the Bank, the Echevarria firm, or the Awerbach firm. On the next day, January 11, 2007, the clerk entered the requested default against the Bank. The clerk’s default indicated that a copy of the default was furnished to Lloyd’s trial counsel and to the Bank.
On January 23, 2007, Lloyd filed a motion for final judgment in the quiet title action. The certificate of service on the motion indicates that Lloyd served a copy of this motion on the Bank at its address in Minneapolis. Again, Lloyd did not serve a copy of the motion on the Echevar-ria firm or on the Awerbach firm. On the same day that the motion was filed, the circuit court entered a final judgment quieting title to the property in Lloyd free from any and all claims of the Bank. The final judgment indicates that a copy of it was sent to the Bank at its address in Minneapolis. Copies of the final judgment were not sent to either the Echevarria firm or the Awerbach firm.
On March 1, 2007, Mr. Walther of Southern Title learned that the Bank had been served with process in the quiet title action and that a clerk’s default and a final judgment had been entered against the Bank. The same day, Mr. Awerbach contacted Lloyd’s trial counsel and told him that the Awerbach firm had been retained by Southern Title to represent the Bank with respect to Lloyd’s claim. Lloyd’s trial counsel informed Mr. Awerbach that the Bank had been defaulted, that a final judgment had been entered, and that the time for filing an appeal had already run.
On March 8, 2007, the Awerbach firm filed a motion in the quiet title action seeking to vacate the clerk’s default, to vacate the final judgment quieting title to the property in Lloyd against the Bank, and to consolidate the quiet title action with the mortgage foreclosure action. The motion was supported by affidavits from *639 Mr. Awerbach, Mr. Walther, and an attorney with the Echevarria firm. In its motion to vacate, the Bank alleged that Lloyd was aware of the following facts: (1) that the Bank intended to defend the quiet title action on the merits, (2) that Southern Title intended to retain counsel to represent the Bank in the quiet title action, and (3) that the Awerbach firm had filed a notice of appearance on behalf of the Bank in the mortgage foreclosure action. Based on these allegations, the Bank contended that Lloyd could not properly apply for and obtain the entry of a clerk’s default under Florida Rule of Civil Procedure 1.500(a). The Bank argued further that Lloyd was required instead by rule 1.500(b) to apply to the court for the entry of a default and to serve notice of the application for default. See generally Karl B. Grube, Default and Relief from Default in Florida Civil Practice Before Trial §§ 18.6, 18.8-.12 (Fla. Bar CLE 7th ed. 2004) (discussing the requirements for the entry of defaults under Fla. R. Civ. P. I.500).
In addition to the motion to vacate, the Bank filed a proposed answer and counterclaim to Lloyd’s complaint to quiet title. The answer raised several defenses to Lloyd’s claim. In pertinent part, the Bank alleged that under principles of equitable and conventional subrogation, it was entitled to an equitable lien against the property, superior to Lloyd’s claim, in the amount of $144,889.37. This was the amount of the proceeds from the Fremont loan that was used to satisfy the first mortgage on the property that had been held by Wells Fargo prior to the sale of the property by Mr. Lee to Mr. Rhodes. In the counterclaim, the Bank sought the foreclosure against Lloyd of the Bank’s claimed equitable lien on the property.
II. THE CIRCUIT COURT’S RULING
At a hearing on the Bank’s motion to vacate, the parties did not present any testimony. The Bank relied on the affidavits that it had filed in support of its motion. In opposition to the motion, Lloyd filed an affidavit executed by Lloyd’s trial counsel. The circuit court considered the Bank’s motion on the affidavits and the arguments of counsel. The circuit court did not announce its ruling at the conclusion of the hearing. In a later written order, the circuit court said:
Counsel for [the] Bank argued based upon a lack of notice to [the] Bank prior to the default being sought in this case....
... The burden of establishing a basis under the law set forth in Nation[al] Union Fire Insurance Company of Pittsburgh v. McWilliams, 799 So.2d 378 (Fla. 4th DCA 2001)[,] and similar cases is upon the moving party. [The Awerbach firm] has done an admirable job in trying to address the situation and confusion created prior to that firm being retained. The Court does not find that the factual predicate required before the application of the case law relied upon by the [B]ank has been established of record.
Based on these conclusions, the circuit court denied the Bank’s motion to vacate.
III.THE STANDARD OF REVIEW
We review an order denying a motion to vacate a clerk’s default under an abuse of discretion standard. Hornblower v. Cobb, 932 So.2d 402, 405 (Fla. 2d DCA 2006) (citing Marshall Davis, Inc. v. Incapco, Inc., 558 So.2d 206, 207-08 (Fla. 2d DCA 1990)). Further, we apply the well-established principle preferring the decision of an action on its merits:
“Where there exists any reasonable doubt in the matter, and where there has been no trial on the merits, the trial *640 court is to exercise its discretion in the direction of vacating the default.” Apolaro v. Falcon, 566 So.2d 815, 816 (Fla. 3d DCA 1990) (citing North Shore Hosp., Inc. v. Barber, 143 So.2d 849, 852-53 (Fla.1962)); see also Geer v. Jacobsen, 880 So.2d 717, 720 (Fla. 2d DCA 2004) (acknowledging strong preference for deciding lawsuits on merits).
Hornblower, 932 So.2d at 405-06.
In reviewing the circuit court’s order, we are also mindful of the Supreme Court of Florida’s teaching from many years ago:
The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not [a] procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant.
Coggin v. Barfield, 150 Fla. 551, 8 So.2d 9, 11 (1942).
IY. THE APPLICABLE LAW
A trial court should vacate an ex parte default when “the plaintiff seeking default had actual knowledge that the defendant was represented by counsel and intended to defend the lawsuit, but failed to contact the defendant’s counsel prior to seeking default.” Nat’l Union Fire Ins. Co. of Pittsburgh v. McWilliams, 799 So.2d 378, 380 (Fla. 4th DCA 2001) (citing Ole, Inc. v. Yariv ex rel. Yariv, 566 So.2d 812, 814 (Fla. 3d DCA 1990)). When the plaintiff is aware that the defendant is represented by counsel and intends to defend on the merits, Florida Rule of Civil Procedure 1.500(b) requires the plaintiff to serve the defendant with notice of the application for default and to present it to the court for entry. See Gulf Maint. & Supply, Inc. v. Barnett Bank of Tallahassee, 543 So.2d 813, 817 (Fla. 1st DCA 1989). A clerk’s default entered in accordance with Florida Rule of Civil Procedure 1.500(a) under these circumstances is invalid and renders a resulting judgment void. Id.
When a plaintiff with actual knowledge that the defendant is represented by counsel and intends to defend the lawsuit makes an ex parte application for a clerk’s default, the effect is to insure that the defendant does not have a reasonable opportunity to correct what was obviously an administrative error. See Ole, Inc., 566 So.2d at 814 (discussing the decision in Gulf Maint., 543 So.2d 813). A default entered in violation of the due process notice requirement of rule 1.500(b) must be vacated without regard to whether the defendant can establish a meritorious defense or whether the defendant can demonstrate inadvertence or excusable neglect under Florida Rule of Civil Procedure 1.540(b). See Int’l Energy Corp. v. Hackett, 687 So.2d 941, 943 (Fla. 3d DCA 1997); Gulf Maint., 543 So.2d at 817.
V. DISCUSSION
A. Framing the Issue
In this case, Lloyd obtained the entry of a clerk’s default without prior notice to the Bank. Under these circumstances, the issues of fact presented to the circuit court for determination were twofold: (1) whether Lloyd had actual knowledge that the Bank intended to defend the quiet title action and (2) whether Lloyd had actual knowledge the Bank was represented by counsel. See Nat’l Union, 799 So.2d at 380. In its written order denying the Bank’s motion to vacate, the circuit court did not make findings of fact on either of these issues. Instead the circuit court simply declared that the Bank had failed to establish “the factual predicate re *641 quired.” We assume that the twofold inquiry required under National Union was the “factual predicate” to which the circuit court referred in its order denying the motion to vacate.
In cases such as this one involving a trial court’s denial of a motion to vacate a default judgment, “ ‘[t]he discretion of a trial judge is ... a heavy factor ... but as always judicial discretion must rest upon facts ascertainable from the record.’ ” Garcia Ins. Agency, Inc. v. Diaz, 351 So.2d 1137, 1139 (Fla. 2d DCA 1977) (alterations in original) (quoting Imperial Indus., Inc. v. Moore Pipe & Sprinkler Co., 261 So.2d 540, 542 (Fla. 3d DCA 1972)). Here, to the extent that the circuit court concluded that the Bank had failed to establish “the factual predicate required,” its findings are not supported by competent, substantial evidence in the record. We will consider below the evidence concerning each of the two parts of the National Union test.
B. Knowledge of Intent to Defend
The affidavits filed by both parties in connection with the hearing on the motion to vacate provide overwhelming support for the conclusion that Lloyd had actual knowledge of the Bank’s intent to defend. First, Lloyd’s trial counsel had several contacts with lawyers at the Eche-varria firm. One of the subjects of these contacts was whether the Echevarria firm would accept service of process and defend the quiet title action on behalf of the Bank. Lloyd’s trial counsel did not believe that the Echevarria firm’s refusal to represent the Bank in the quiet title action stemmed from a decision by the Bank not to defend the action. Based on the message left with his secretary, Lloyd’s trial counsel knew that the Echevarria firm’s decision to decline to undertake the defense of the quiet title action resulted from the firm’s inability to resolve with the Bank an issue concerning a potential conflict of interest.
Second, Lloyd’s trial counsel knew that the Bank was covered by a policy of title insurance with respect to the Fremont mortgage and that the title insurer intended to provide the Bank with a defense of Lloyd’s claim. Lloyd’s trial counsel had two telephone conversations with Mr; Walther of Southern Title concerning a possible settlement of Lloyd’s claim. When these settlement discussions concluded unsuccessfully, Mr. Walther advised Lloyd’s trial counsel that “Southern Title would retain counsel to represent and defend [the] Bank in the [quiet title action].” Thus Lloyd’s trial counsel was not operating under any misapprehension about Southern Title’s intent to provide the Bank with a defense. As Lloyd’s trial counsel put it at the hearing on the motion to vacate, “Of course [Southern Title was] going to hire an attorney.”
Finally, the affidavit executed by Lloyd’s trial counsel that was filed in opposition to the motion to vacate conceded Lloyd’s knowledge that the Bank intended to defend the quiet title action. According to the affidavit, the Bank’s representative, who agreed to accept service of process on its behalf in the quiet title action, “indicated that upon receipt of the paperwork, she would execute and return the Acceptance of Service and then forward the [Complaint] and Summons through the appropriate channels so that an Answer could be filed.” (Emphasis added.) In the face of all of this evidence, Lloyd does not even suggest that it did not have actual knowledge of the Bank’s intent to defend the quiet title action. Thus we turn now to the second part of the National Union test, i.e., the question of whether Lloyd had actual knowledge that the Bank was represented by counsel.
*642 C. Knowledge of Representation by Counsel.
On the issue of whether Lloyd had actual knowledge that the Bank was represented by counsel, Lloyd observes that no one informed it of the identity of the attorney who would represent the Bank in the quiet title action. The Bank responds that once the Awerbach firm filed its notice of appearance on the Bank’s behalf in the related foreclosure action, Lloyd should reasonably have concluded that the Awerbach firm would be representing the Bank in the quiet title action. In reply, Lloyd warns of the “danger” of requiring counsel to make such assumptions and directs our attention to similar concerns expressed by Judge Gunther in her dissent in the National Union case. See Nat’l Union, 799 So.2d at 381 (Gunther, J., dissenting).
Lloyd’s trial counsel addressed this issue in the hearing on the motion to vacate in the circuit court. During the argument on the Bank’s motion, Lloyd’s trial counsel expressed his position on the effect of the Awerbach firm’s notice of appearance in the mortgage foreclosure action as follows:
[LLOYD’S TRIAL COUNSEL]: But in any event, [the Echevarria] firm said they couldn’t represent. When [Mr. Awerbach] files an appearance as co-counsel in that case, in my mind that doesn’t have anything to do with it because he’s representing [the] Bank in that case. He’s not representing — with the Echevarria law firm, who has a conflict. So I put him in the same shoes as the Echevarria law firm.
THE COURT: Him being who?
[LLOYD’S TRIAL COUNSEL]: Mr. Awerbach.
So I’m sitting there waiting for somebody to file an answer. I didn’t feel it was my responsibility to call Mr. Awer-bach up and say, hey, has your client fully informed you, your client’s known [about the quiet title action] since August.
(Emphasis added.) Thus, because the Aw-erbach firm’s notice of appearance was filed in the related foreclosure action but not in the quiet title action, Lloyd’s trial counsel asserted that he had no reason to believe that Mr. Awerbach was representing the Bank with respect to Lloyd’s claim in both actions.
We conclude that the undisputed evidence establishes that Lloyd did have actual knowledge that the Bank was represented by counsel with respect to Lloyd’s claim. Based on his contacts with the Echevarria firm and with Mr. Walther at Southern Title, Lloyd’s trial counsel knew that the Echevarria firm would not represent the Bank either in the mortgage foreclosure action with respect to Lloyd’s claim or in the quiet title action. Based on these same contacts and on his contact with the Bank representative, Lloyd’s trial counsel also knew that an appearance by additional counsel on behalf of the Bank was imminent.
The Echevarria firm was already representing the Bank with respect to the foreclosure of the Fremont mortgage. When the Awerbach firm filed its notice of appearance in the mortgage foreclosure action, the Bank did not need another law firm to help the Echevarria firm foreclose the Fremont mortgage. Indeed, the circuit court had already entered a summary final judgment of foreclosure in that case. But the Bank did require additional counsel — unencumbered by any potential conflict of interest — who could represent the Bank with respect to Lloyd’s claim that had been asserted in both of the pending actions. It was in this context that Lloyd’s trial counsel received the Awerbach firm’s *643 notice of appearance on behalf of the Bank.[4] Lloyd’s trial counsel argued that he could disregard the effect of the notice of appearance because he had reasonably concluded that the Awerbach firm had been retained to undertake the same assignment as the Echevarria firm, i.e., to wear the “same shoes.” Under the circumstances, we find this argument to be unpersuasive.
Lloyd’s argument is based on the filing of the Awerbach firm’s notice of appearance in the foreclosure action and not in the quiet title action. However, these two actions had become related after Lloyd had asserted his claim to hold title to the property free of the Bank’s mortgage in the motion to intervene that was filed in the mortgage foreclosure action. After Lloyd had filed his motion to intervene, both actions involved Lloyd’s claim to own the property in question free and clear of the Bank’s mortgage. Thus the receipt by Lloyd’s trial counsel of the Awerbach firm’s notice of appearance in the related mortgage foreclosure action was sufficient to invoke the requirement that Lloyd give notice to the Bank by serving the Awer-bach firm before applying for the entry of a default.[5] See Geraci v. Preferred Capital Mkts., Inc., 802 So.2d 479, 482 (Fla. 3d DCA 2001); Nat’l Union, 799 So.2d at 379-80; Nationsbank, N.A. v. Regency Ctrs., Inc., 725 So.2d 439, 441 (Fla. 4th DCA 1999) (Gross, J., concurring specially); Rapid Credit Corp. v. Sunset Park Ctr., Ltd., 566 So.2d 810, 811 (Fla. 3d DCA 1990).
V. CONCLUSION
For the foregoing reasons, the circuit court abused its discretion in denying the Bank’s motion to vacate. Accordingly, we reverse the circuit court’s order, and we remand this case to the circuit court with directions to vacate the clerk’s default and the default judgment. On remand, the circuit court may conduct such further proceedings as may be appropriate.
Reversed and remanded with directions.
FULMER and DAVIS, JJ., Concur.

. There has never been an evidentiary hearing in this case. The recital of the facts in this opinion is based on the pleadings and the affidavits filed by the parties in the circuit court. The pertinent facts are essentially undisputed. The parties disagree about the legal conclusions to be drawn from the facts.

. Lloyd's counsel on this appeal did not represent Lloyd in the circuit court.

. The Bank was required to serve its answer or a motion under Florida Rule of Civil Procedure 1.140(b) or (e) within twenty days after service of the summons and complaint. See Fla. R. Civ. P. 1.140(a). The twentieth day fell on January 7, 2007, a Sunday. Therefore, the service of the Bank’s answer or a motion was due on Monday, January 8, 2007. See Fla. R. Civ. P. 1.090(a).

. We note that service of the notice of appearance occurred before the entry of the default. The Awerbach firm served its notice of appearance by mail and by facsimile on January 8, 2007. Service by mail is complete upon mailing. Fla. R. Civ. P. 1.080(b); Beztak Constr. Co. v. Kesling Carpets, Inc., 596 So.2d 1297, 1297 (Fla. 2d DCA 1992). Under rule 1.080(b), facsimile transmission occurs when transmission is complete. The clerk’s default was not entered until January 11, 2007, three days after service of the notice of appearance was complete.

. We note that the Bank had served a "paper” in the action, to-wit: the acceptance of service of process. Thus, even if Lloyd did not know that the Awerbach firm would represent the Bank with respect to Lloyd’s claim, Lloyd was required to notify the Bank before moving for the entry of a default. See EGF Tampa Assocs. v. Edgar V. Bohlen, G.F.G.M.A.G., 532 So.2d 1318, 1320-21 (Fla. 2d DCA 1988) (noting that courts have generally applied a liberal construction to what qualifies as a "paper” under rule 1.500(b)). However, the Bank did not make this argument in the circuit court. Accordingly, this point forms no part of the basis for our decision in this case.