# Third District Court of Appeal

## State of Florida

Opinion filed February 4, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-832
Lower Tribunal No. 12-29331
_____


**M.W., a minor, etc., et al.,**
Appellants,

vs.

**SPCP Group V, LLC, etc., et al.,**
Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Gerson & Schwartz, P.A., Edward S. Schwartz and Philip M. Gerson, for appellants.

Fowler White Burnett, P.A., and June G. Hoffman and Helaine S. Goodner (Fort Lauderdale), for appellees.


Before  SHEPHERD, C.J., and EMAS and LOGUE, JJ.

LOGUE, J.

M.W., a minor, (the "plaintiff") appeals the decision of the trial court to set aside a clerk's default and final judgment against SPCP Group V, LLC (the "defendant"). The plaintiff obtained the ex parte default even though he knew from pre-suit contacts with opposing counsel that the opposing party was represented by counsel and intended to defend on the merits. The issue before us is whether the trial court committed reversible error in vacating the ex parte default.

The governing standard of review allows for reversal only upon a finding of a "gross abuse of discretion." This court has previously ruled that a trial court committed reversible error by failing to vacate a default in identical circumstances, namely where the plaintiff obtained an ex parte default even though it knew from pre-suit contacts that the defendant was represented by counsel and intended to defend on the merits. Because we cannot say the trial court committed a gross abuse of discretion in light of the case law that bound the trial court's decision, we affirm.

## FACTS AND PROCEDURAL HISTORY

The plaintiff was injured at an apartment building owned by the defendant. Before the lawsuit was filed, the plaintiff's attorney wrote the defendant two letters and demanded the policy limits. He received a letter in reply from the defendant's attorney. Besides this correspondence, the plaintiff's attorney and the defendant's attorney also engaged in a conference by telephone. From these contacts, the

plaintiff's attorney learned that the defendant was represented by counsel and intended to defend the suit on the merits.[1] During the telephone conversation, however, the plaintiff's attorney found the defendant's attorney to be uncooperative. As he explained, "given [the defendant's attorney's] lack of cooperation, I did not attempt to contact him again."

The plaintiff proceeded to file a complaint and serve the defendant. The defendant failed to answer. At that point, even though the plaintiff's attorney knew that the defendant was represented by counsel and intended to defend on the merits, the plaintiff obtained a clerk's default without providing notice to the defendant or to the defendant's attorney.

After the plaintiff had obtained the ex parte default and as the plaintiff's attorney was preparing to try the damages portion of the case uncontested, the defense attorney called his office to inquire about the status of the case and to ascertain whether the defendant's insurance carrier was defending the lawsuit. Based upon his own affidavit filed in this case, the plaintiff's attorney instructed his assistant to "tell [the defendant's attorney] to contact his insurance company. We don't know what they are doing or not." The plaintiff then proceeded to try the

_____

[1] The trial judge expressly found that the plaintiff's attorney knew the defendant's attorney was representing the defendant. This finding is supported by the letters, the conference call, and the plaintiff's attorney's admission in his affidavit. In any event, no party has challenged the trial court's fact finding on this point.

uncontested damages case to the jury. The plaintiff won a jury verdict of $1,250,000.

When the defendant learned of the verdict, it moved to vacate the judgment that had been entered on the jury verdict on the basis that the default was void for lack of notice under Florida Rule of Civil Procedure 1.540(b)(4).[2] The trial court vacated the judgment because the default was void for lack of notice. The plaintiff timely appealed.

## ANALYSIS

### A. Standard of Review: "Gross Abuse of Discretion"

The plaintiff faces a high, almost insurmountable standard of review. When it comes to vacating defaults, Florida has a long and proud tradition of favoring adjudicating cases on the merits and setting aside defaults. As part of this tradition, Florida law holds that a trial judge's decision to vacate a default can be overturned only upon a showing of a "gross abuse of discretion."

Over a half a century ago, the Florida Supreme Court explained the standard of review in these cases as follows: "this court held that a showing of gross abuse of a trial court's discretion is necessary on appeal to justify reversal of the lower court's ruling on a motion to vacate." N. Shore Hosp., Inc. v. Barber, 143 So. 2d

---

[2] The defendant also moved to set aside the judgment for excusable neglect under rule 1.540(b)(1). The trial court expressly denied that application and neither party has appealed that decision.

849, 852 (Fla. 1962) (emphasis added) (reversing a district court's holding that "a mere abuse of the trial judge's discretion is a sufficient basis for reversal of his ruling on the motion to vacate").

"Gross abuse of discretion" has remained the standard down through the decades to today. For example, this court has held that, based upon "Florida's public policy of adjudicating cases on the merits . . . a trial court's vacatur of a default judgment should be reversed only if the vacatur constitutes a gross abuse of discretion." Gables Club Marina, LLC v. Gables Condo. & Club Ass'n, Inc., 948 So. 2d 21, 23 (Fla. 3d DCA 2006).

Indeed, the Florida Supreme Court has emphasized that if there is "any reasonable doubt in the matter [of vacating a default], it should be resolved in favor of granting the application and allowing a trial upon the merits of the case." N. Shore Hosp., Inc., 143 So. 2d at 853; see also Ole, Inc. v. Yariv, 566 So. 2d 812, 815 (Fla. 3d DCA 1990). The Fourth District has taken the position that appellate courts "should be as deferential to a trial judge's decision vacating a default as [we] can possibly be, upsetting it very rarely and only with undeniable provocation." NIVCAB, Inc. v. Accord Ins. Network of Am., Inc., 24 So. 3d 1204, 1204-05 (Fla. 4th DCA 2009) (quoting Bethesda Mem'l Hosp., Inc. v. Laska, 977 So. 2d 804, 806 (Fla. 4th DCA 2008)). When this case is examined in light of the

governing standard of review, it is clear the trial court did not commit a reversible error in setting aside the default.

**B. Ex Parte Defaults Are Prohibited Where a Party Knows Opposing Party is Represented by Counsel and Intends to Defend.**

The trial court was correct to set aside the ex parte default in this case. The default was obtained without notice to the opposing side, even though the plaintiff knew that the defendant was represented by counsel and intended to defend. This violates a well-established rule in Florida law that "default is not appropriate in cases where the plaintiff knows that a defendant is represented by counsel who intends to assert matters in defense of the cause of action." Gulf Maint. & Supply, Inc. v. Barnett Bank of Tallahassee, 543 So. 2d 813, 816 (Fla. 1st DCA 1989).

On all fours with the instant case is Apple Premium Finance Service Co. v. Teachers Insurance & Annuity Association of America, 727 So. 2d 1089 (Fla. 3d DCA 1999). In Apple Premium, the plaintiff knew the defendant was represented by counsel and intended to defend on the merits. Exactly as occurred in this case, the plaintiff knew these facts only from pre-suit contacts with the defendant. Nevertheless, when the defendant did not timely answer the complaint, the plaintiff in Apple Premium obtained an ex parte default. This court reversed the trial court for refusing to set aside the default under those circumstances. In doing so, it focused on the fact that the plaintiff knew the defendant had counsel and intended to defend. Reversal was required, this court held, because "notice of an application

6

for default should always be served when the plaintiff is aware that a defendant is being represented by counsel who has expressed an intention to defend on the merits." Id. at 1090 (quoting Ole, Inc., 566 So. 2d at 815).

The plaintiff in the instant case unsuccessfully attempts to distinguish Apple Premium by contending that the decision in Apple Premium was based, not on the plaintiff's knowledge, but rather on the extent of the pre-suit contacts that gave plaintiff the crucial knowledge. First, Apple Premium spends only one sentence summarizing the pre-suit contacts: "This [pre-suit contact] included correspondence between counsel and a pre-suit settlement conference between counsel and representatives of the respective clients." From this passing reference we can only glean that the contacts consisted of correspondence and a conference. We cannot tell if the correspondence consisted of one letter, two letters, three letters (as occurred in the instant case), or more. Also, we cannot tell if the sole conference was in person, or by telephone (as occurred in the instant case). Because of the lack of detail concerning the nature of the pre-suit contacts in Apple Premium, we cannot determine whether the correspondence and conference in Apple Premium had more or less quality, extent, substance, or duration than the correspondence and conference in the instant case. Apple Premium cannot be distinguished from the instant case in the manner suggested by the plaintiff.

More importantly, this argument completely misconstrues <u>Apple Premium</u>. <u>Apple Premium</u> did not focus on the extent of the pre-suit contacts. <u>Apple Premium</u> turned on the plaintiff's knowledge that the defendant was represented and intended to defend. It was that knowledge conveyed by the pre-suit contacts—not the nature of the pre-suit contacts—that was dispositive in <u>Apple Premium</u>. On this dispositive point, the plaintiff in the instant case stands exactly in the shoes of the plaintiff in <u>Apple Premium</u>: from pre-suit contacts, he knew the defendant had counsel and intended to defend. Under the holding of <u>Apple Premium</u>, the plaintiff was required to give notice of the application for default. The trial court's decision in the instant case fully accords with the letter and spirit of <u>Apple Premium</u>.

> <u>Apple Premium</u> stands as part of a sustained tradition of cases holding
>
> that notice of an application for default should always be served when the plaintiff is aware that a defendant is being represented by counsel who has expressed an intention to defend on the merits. A default is a procedural matter within the control of the attorney, so plaintiff's counsel should contact the attorney known to be representing a defendant to determine whether the latter intends to proceed in the matter before causing a default to be entered.

<u>Gulf Maint. & Supply, Inc.</u>, 543 So. 2d at 816 (reversing trial court for failure to vacate ex parte default when party obtaining default knew opposing party was represented and intended to defend). In case after case, the Florida courts have held that a party cannot obtain an ex parte default when the party knows that the opposing side is represented by counsel and intends to defend on the merits.[3]

At the source of this long line of cases is the principle that "[t]he purpose of the rule [allowing for ex parte defaults][4] is to speed the action toward conclusion on the merits where possible, not to expedite litigation by ex parte actions and surprise." Cardet v. Resolution Trust Corp., 563 So. 2d 167, 168 (Fla. 3d DCA 1990) (quoting Gulf Maint. & Supply, Inc., 543 So. 2d at 816)). "It is not procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant." Coggin v. Barfield, 8 So. 2d 9, 11 (Fla. 1942).

Because the plaintiff's argument would allow this dispute to be resolved by surprise and without consideration of the merits, the trial court was correct in rejecting the plaintiff's arguments.

**C. Defendant's Attorney's Alleged Uncooperativeness, Neglect, or Incompetence Does Not Excuse Plaintiff's Failure to Give the Notice Required by Due Process.**

---

[3] See, e.g., Ole, Inc., 566 So. 2d at 814 (reversing trial court for failing to set aside default where "plaintiffs knew that [the defendant] intended to defend the lawsuit" and "[n]otwithstanding that knowledge, plaintiffs elected to apply ex parte for entry of a default by the clerk, and the case proceeded thereafter without notice to [the defendant]"); Rapid Credit Corp. v. Sunset Park Ctr., Ltd., 566 So. 2d 810, 811 (Fla. 3d DCA 1990) (reversing trial court for failure to vacate ex parte default when party obtained default without giving notice, although it knew from related lawsuit that defendant was represented by counsel and intended to defend); J.A.R., Inc. v. Universal Am. Realty Corp., 485 So. 2d 467, 468 (Fla. 3d DCA 1986) (reversing trial court for failing to set aside default where "[a]lmost two weeks after defendants served their 'defense' letter on plaintiff's counsel, plaintiff caused the clerk of the court to enter a default without notice to defendants").

[4] Fla. R. Civ. P. 1.500(a).

The plaintiff's brief in this case spends an inordinate amount of time characterizing the conduct of the defendant's counsel as uncooperative, neglectful, and incompetent.[5] But all of that is irrelevant to this appeal. In fact, the trial court refused to set aside the default based upon excusable neglect. No party has appealed that determination. Therefore there is no issue here whether or not defendant can show excusable neglect: it cannot. The trial court set aside the default only because of the plaintiff's failure to give notice. Thus, the sole issue before this court is whether plaintiff was required to give notice. Notice is the first and most essential element of due process, and failure to give notice of a default, when required, makes a default void. Gulf Maint., 543 So. 2d at 817. A party is not excused from the due process requirement of providing notice to an opposing party simply because the opposing party is uncooperative, neglectful, or incompetent. For this reason, plaintiff's characterization of the defendant's counsel's conduct, even if true (and we do not reach that issue because it is not before us), has no bearing on the outcome of this case.

Indeed, the record reflects that, after the plaintiff obtained the ex parte default and was preparing his case on damages, the defense attorney called his office to inquire about the status of the case and to ascertain whether the

[5] The attorneys representing the defendant in this appeal do not include the defendant's attorney below who allegedly committed the acts that plaintiff relies upon in its brief.

defendant's insurance carrier was defending the lawsuit. Based upon his own affidavit filed in this case, the plaintiff's attorney instructed his assistant to "tell [the defendant's attorney] to contact his insurance company. We don't know what they are doing or not." This statement may well have been a momentary lapse of judgment caused by the plaintiff's attorney being justifiably irate at his perception of the defendant's attorney as being uncooperative. While we are certainly sympathetic to the frustration that an attorney can feel when opposing counsel is uncooperative or engages in gamesmanship during litigation, those sentiments do not negate the obligation to provide notice to opposing counsel of a default. Even at that late point in time, the plaintiff had an opportunity, if not an obligation to a fellow officer of the court,[6] to give notice of the default or at least advise him that the damages portion of the case remained pending and was uncontested.

Even such late notice would have served to get this case back on track to be resolved on the merits. Rather than take that opportunity, however, the plaintiff's attorney made a statement that was, at best, intended to avoid informing the defendant's attorney that a default had been obtained ex parte. The plaintiff's attorney then proceeded to try the uncontested damages case to the jury. In light of

---

[6] Rapid Credit Corp., 566 So. 2d at 811 ("Simply stated, the issue before this court involves an attorney's affirmative duty to disclose information regarding the procedural status of a case, both to the court and opposing counsel, prior to a default being entered. The rules and case law are clear on this issue."); see also id. at 812 (Schwartz, J., concurring).

these facts, the plaintiff's attempt to change the subject from plaintiff's failure to give notice to the defendant's failure to detect the lack of notice is unpersuasive.

## CONCLUSION

To decide for the plaintiff and reverse the trial court, we would have to hold that the trial court grossly abused its discretion in following the binding precedent of this court and requiring this case to be resolved on the merits. Based on the record before us, we cannot say the trial court grossly abused its discretion. For this reason, we affirm the trial court's order vacating the default.

SHEPHERD, C.J., concurs.

SHEPHERD, C.J., concurring.

This case presents the difficult question of how to rule when confronted with a grossly negligent defense attorney and a plaintiff's attorney who, as the majority opinion kindly suggests, sought to "expedite litigation by ex parte actions and surprise." The special concurrence is correct to question the footing on which Apple Premium exists. However, as between a grossly negligent defense lawyer and an opposing counsel about whom one could be forgiven for thinking that he sentiently shifted his choice of communication points between the defendant's Connecticut headquarters and its local defense counsel for reasons known only to himself, sentience must yield.

EMAS, J., specially concurring.

I concur in the result because I believe it to be dictated by this court's prior decision in Apple Premium Finance Serv. Co. v. Teachers Ins. & Annuity Ass'n of Am., 727 So. 2d 1089 (Fla. 3d DCA 1999). Were we writing on a clean slate however, it might well be appropriate to consider whether the notice requirement of rule 1.500(b) is properly triggered by a single pre-suit letter sent five months before the commencement of the action.

The plain language of rule 1.500 (a) and (b) provides that a party may seek a clerk's default unless the party against whom affirmative relief is sought "has filed or served any paper *in the action*." (Emphasis added.) It is undisputed that, following commencement of the suit, and for five months thereafter, the defendant did not file or serve any paper *in the action*. In fact, no paper was filed in the action on behalf of the defendant until nine months after plaintiff obtained a clerk's default. The "paper" which serves as the basis for triggering the notice requirement (and the basis for vacating the default) was the letter sent by McClosky to Gerson five months before the complaint was filed.

With the exception of Apple Premium, every case in Florida to apply rule 1.500(a) in this context involved communications between counsel after the action

14

had already been commenced.  See, e.g., <u>Ole, Inc. v. Yariv</u>, 566 So. 2d 812, 814 (Fla. 3d DCA 1990); <u>J.A.R. v. Universal Am. Realty Corp.</u>, 485 So. 2d 467, 468 (Fla. 3d DCA 1986); <u>Reicheinbach v. Southeast Bank, N.A.</u>, 462 So. 2d 611, 611 (Fla. 3d DCA 1985); <u>Green Solutions Int'l., Inc., v. Gilligan</u>, 807 So. 2d 693, 695 (Fla. 5th DCA 2002); <u>Nat'l Union Fire Ins. Co. v. McWilliams</u>, 799 So. 2d 378, 379-80 (Fla. 4th DCA 2001); <u>Ziff v. Stuber</u>, 596 So. 2d 754, 755 (Fla. 4th DCA 1992); <u>Gulf Maint. & Supply, Inc. v. Barnett Bank of Tallahassee</u>, 543 So. 2d 813, 816 (Fla. 1st DCA 1989); <u>NCR Corp. v. Cannon & Wolfe Lumber Co.</u>, 501 So. 2d 157, 158 n. 1 (Fla. 1st DCA 1987); <u>EGF Tampa Assocs. V. Edgar V. Bohlen, G.F.G.M. A.G.</u>, 532 So. 2d 1318, 1320-21 (Fla. 2d DCA 1988); <u>Terino Bros. v. Airey</u>, 364 So. 2d 768, 768-79 (Fla. 2d DCA 1978).  In those cases, it was self-evident from the communications that counsel was representing the defendant, as no other reason existed for counsel to communicate with plaintiff's counsel once suit was filed.  It was likewise self-evident from the communication that the defendant intended to defend the action, as again the suit had already been filed and the nature of the communication expressed an intent and desire to defend the already-commenced action.  These decisions, and the rule authorizing entry of a clerk's default under 1.500(a), are "based on the premise that the failure to <u>respond to the complaint</u> indicates that a defendant is not contesting the case." <u>Ziff</u>, 596 So. 2d at 755 (emphasis added).  Each of the cases cited above held that the

communication by defendant or defendant's counsel constituted a paper filed or served *in the action* because the communication represented an effort to respond to a lawsuit that had already been filed.

In the instant case, by contrast, the only written communication between counsel that appears of record is the February 22, 2012 letter from McClosky to Gerson. This communication was sent five months before Gerson filed the lawsuit; there was no other written communication between Gerson and McClosky before the lawsuit was filed, and no communication at all between the filing of the lawsuit and the entry of the default. The letter does not expressly state SPCP's intent to defend, nor does it expressly indicate that McClosky will be the attorney representing SPCP if a lawsuit was filed. Further, unlike the cases involving post-suit communications, these matters are not self-evident.

In Apple Premium, this Court reversed an order denying defendant's motion to set aside a default where the parties and their lawyers had exchanged letters, engaged in pre-suit negotiations, and attended a settlement conference accompanied by their clients in an effort to resolve the matter before suit was filed. We held that, under those circumstances, the plaintiff should have served notice of its application for default because plaintiff was aware the defendant was "represented by counsel who ha[d] expressed an intention to defend on the merits." Id. at 1090.[7] However, the nature and quality of the pre-suit communications

16

between counsel in Apple Premium appears to be significantly more substantial and less remote than the communication in the instant case. Here, we have but a single letter sent by McClosky to Gerson five months before the litigation was filed, with no expressed intent that McClosky will be representing SPCP in any lawsuit and will defend on the merits.[8]

Nevertheless, given our prior precedent, which appears to support the proposition that a pre-suit communication can trigger the notice requirement of rule 1.500(b), I cannot conclude that the trial court abused its discretion in vacating the clerk's default.

---

[7] The Apple Premium opinion does not discuss the distinction between pre-suit and post-suit communications as would be expected from the plain language of rule 1.500(b)'s requirement of a paper filed "in the action," and in fact the Apple Premium opinion does not reference rule 1.500 at all.

[8] It is noteworthy that McClosky was aware, no later than October 2012, that the lawsuit had been filed against SPCP. However, McClosky took no action and filed no appearance or pleading in the case because he believed it was a "PI case being handled by [SPCP's] insurance company." In April 2013, SPCP sent McClosky a copy of the notice of trial on damages only. McClosky instructed his associate to pull the court docket, which showed a default had been entered against SPCP in February 2013. Nevertheless, McClosky did not enter an appearance in the case or file any pleading or motion at that time. McClosky first entered the case on behalf of SPCP on November 5, 2013, after the trial was concluded and a verdict returned. It is difficult to conceive how Gerson should have been aware that McClosky was representing SPCP in the action when McClosky himself did not believe he was representing SPCP in the action.

17